JOANNA BEE *v.* RUDOLPH BEE
(AC 21741)

Lavery, C. J., and Schaller and Bishop, Js.

Argued March 28—officially released October 7, 2003

*Steven R. Dembo*, with whom were *Kelly L. Babbitt* and, on the brief, *P. Jo Anne Burgh*, for the appellant (defendant).

*Kenneth J. Bartschi*, with whom were *Kimberly A. Knox* and, on the brief, *Eliot J. Nerenberg*, for the appellee (plaintiff).

*Opinion*

SCHALLER, J. The defendant, Rudolph Bee, appeals from the judgment of the trial court dissolving his marriage to the plaintiff, Joanna Bee. On appeal, the defendant claims that the court improperly (1) ordered him to pay child support in an amount that deviated from the child support guidelines, (2) ordered him to pay the plaintiff $25,000 in attorney's fees, (3) ordered him to maintain his present life insurance for the benefit of the parties' minor children, (4) ordered him to provide dental insurance for the minor children and (5) determined that it would retain jurisdiction over issues with respect to the property division. At oral argument, we ordered the parties to file supplemental briefs addressing whether, pursuant to *Broaca* v. *Broaca*, 181 Conn. 463, 435 A.2d 1016 (1980), the court lacked subject matter jurisdiction to order the defendant to make the minor children irrevocable beneficiaries of his life insurance. We affirm the judgment of the trial court.

The following facts are relevant to the defendant's appeal. The plaintiff and the defendant were married on March 26, 1976. The plaintiff commenced an action on December 19, 1998, seeking dissolution of the marriage on the ground of irretrievable breakdown. Neither party filed a child support guidelines worksheet[1] as required by Practice Book § 25-30 (e).[2] The court rendered judgment of dissolution on February 7, 2001. At

---

[1] The child support guidelines worksheet is set forth in § 46b-215a-5a of the Regulations of Connecticut State Agencies.

[2] Practice Book § 25-30 (e) provides: "Where there is a minor child who requires support, the parties shall file a completed child support and arrearage guidelines worksheet at the time of any court hearing concerning child support; or at the time of a final hearing in an action for dissolution of marriage, legal separation, annulment, custody or visitation."

the time of the dissolution, the parties had three minor children, aged seventeen, fifteen and twelve. The court found that the defendant's infidelity, bizarre behavior and indifference to the needs of both the plaintiff and the children caused the breakdown of the marriage. The court ordered, inter alia, that the defendant provide health insurance, including dental coverage, for the children and maintain his life insurance for their benefit. The court further ordered the defendant to name the "minor children" as irrevocable beneficiaries of his life insurance and to provide the plaintiff, on an annual basis, with evidence that the insurance is effective. In addition, the court ordered the defendant to pay to the plaintiff $400 per week in child support as well as $25,000 in attorney's fees. The court also ordered the defendant to transfer to the plaintiff 50 percent of two individual retirement accounts (retirement accounts). Additional facts will be set forth as necessary.

I

The defendant claims that the court improperly ordered him to pay child support in an amount that deviated from the child support guidelines. In support of his claim, the defendant argues that the court improperly (1) failed to make findings, including the amount of each party's gross income and the health insurance premiums paid by the defendant, that he asserts were necessary to the calculation of the presumptive amount of child support under the guidelines promulgated pursuant to General Statutes § 46b-215b, (2) failed to determine the presumptive amount of child support and (3) failed to find that the presumptive amount of child support was inequitable pursuant to the factors set forth in the guidelines. In response, the plaintiff argues, inter alia, that the defendant's failure to file a child support guidelines worksheet with the court should preclude the defendant from complaining that the court failed to adhere to the guidelines. We agree with the plaintiff

and, accordingly, decline to review the defendant's claim.

Our Supreme Court has emphasized that a court's adherence to the procedures set forth in the child support guidelines is necessary to facilitate appellate review. See *Favrow* v. *Vargas*, 231 Conn. 1, 29, 647 A.2d 731 (1994). Specifically, when a court deviates from the presumptive amount of support under the guidelines, it must first make a specific finding on the record as to the presumptive amount to "enable an appellate court to compare the ultimate order with the guideline amount and make a more informed decision on a claim that the amount of the deviation, rather than the fact of a deviation, constituted an abuse of discretion." Id.

When, as in the present case, the parties fail to file the required worksheets, the problem is compounded, as both the trial court and the reviewing court lack the guidance necessary to determine what the guidelines require in the particular case. The worksheets are specifically designed to provide an orderly mechanism for the presentation and calculation of the relevant information under the guidelines. Requiring the parties to use the worksheets ensures that all of the relevant information is provided in a format that facilitates and expedites the court's considerable task of applying the detailed requirements of the guidelines. Without that information in the form prescribed by the guidelines, the court is likely to be severely impaired in its task of determining the presumptive amount of support, as well as determining whether any factors might justify deviation from that amount and, if so, to what extent. Thus, the parties' failure to comply with Practice Book § 25-30 (e) necessarily has a tendency to cause what the defendant claims has occurred in the present case, that is, a lack of the detailed findings that our Supreme Court has held are necessary for our appellate review. See id.

We conclude that a party who has failed to submit a child support guidelines worksheet as required by Practice Book § 25-30 (e) cannot complain of the court's alleged failure to comply with the guidelines. Accordingly, we decline to review the defendant's claim that the court did not follow the guidelines in the present case.

## II

The defendant next claims that the court improperly ordered him to pay the plaintiff $25,000 in attorney's fees. Specifically, the defendant argues that the court abused its discretion in ordering the attorney's fees because (1) it failed to make an explicit finding that denying the award would undermine the integrity of the court's other financial orders or that the plaintiff was unable to pay her fees, (2) he presented evidence that he already had paid $35,000 of the plaintiff's attorney's fees, and (3) the order was inconsistent with the court's findings that his health had deteriorated and that his income level was unlikely to be as high in the future as it had been in the past. There is no merit to the defendant's claim.

The following additional facts are relevant to the defendant's claim. At trial, the plaintiff testified that she had paid one of her attorneys $3000 and had paid another attorney $7500, which she had borrowed from her parents. In addition, she testified that at the time of trial, she owed an additional $14,500 in legal fees for a total of $25,000. The plaintiff testified further that the defendant previously had paid her attorneys $35,000 to cover additional legal costs.[3] The defendant also submitted documentation regarding the $35,000 payment.

---

[3] The plaintiff testified as follows:

"[The Plaintiff's Counsel]: And this past spring, did I get some additional money?

"[The Plaintiff]: Yes.

"[The Plaintiff's Counsel]: How much did I get and from whom?

"[The Plaintiff]: You got $10,000.

In its memorandum of decision, the court found that the defendant, a licensed ophthalmologist, had earned an average net income of $70,000 to $80,000 per year, but that the defendant's health had "deteriorated to the point where his employment as an ophthalmologist is doubtful, at least on a full-time basis." The court concluded that the defendant was unlikely to "earn in the future at the same level as he has in the past . . . ." The court also stated, however, that "to a large extent, [the defendant's] high spending levels have been underwritten by withdrawals from marital assets."

The court found that the plaintiff's employment prospects had been limited by her low level of education. The plaintiff had worked for the defendant throughout the parties' marriage, in both a full-time and part-time capacity, performing secretarial and bookkeeping services as well as other tasks such as cleaning the defendant's office. The plaintiff remained employed by the defendant until 1995, and the defendant had not always compensated her for her work which, the court noted, resulted in a lowering of her social security benefits. After 1995, the plaintiff had worked at other low paying jobs, but had never earned a weekly wage of more that $250. The court found that "[b]ecause of [the plaintiff's] lack of education and work skills, it is unlikely that she will be able to earn more that $400 per week in the near future."

The court, in its financial orders, essentially divided the assets equally between the parties. In addition to its other financial orders, the court ordered the defendant to pay the plaintiff $25,000 for her attorney's fees. The court stated that in fashioning its orders, it took

"[The Plaintiff's Counsel]: From your husband?

"[The Plaintiff]: Yes.

"[The Plaintiff's Counsel]: And this past summer did Judge Dranginis order [that] I receive an additional $25,000 retainer?

"[The Plaintiff]: Yes."

into account the fact that the defendant previously had committed numerous violations of the court's automatic orders concerning the dissipation of assets.[4] In a subsequent motion for articulation, the defendant asked the court to articulate the factual and legal basis for the court's award of $25,000 in attorney's fees. The court provided the following articulation: "The evidence clearly indicated that the defendant had expended well over $70,000 for legal fees prior to the case being tried. Payment of the fees came from assets subject to distribution between the parties. The order of $25,000 payment to the plaintiff would still leave her with substantially less in legal fees that those incurred by the defendant."

"General Statutes § 46b-62 governs the award of attorney's fees in dissolution proceedings." *Bornemann* v. *Bornemann*, 245 Conn. 508, 542, 752 A.2d 978 (1998). That section provides in part that "the court may order either spouse . . . to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82. . . ." General Statutes § 46b-62. "The criteria set forth in § 46b-82 are 'the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to [General Statutes §] 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment.' In making an award of attorney's fees under [§ 46b-62], '[t]he court is not obligated to make express findings on each of these statutory criteria.' *Weiman* v. *Weiman*, 188 Conn. 232, 234, 449 A.2d 151 (1982)." *Bornemann* v. *Bornemann*, supra, 542.

---

[4] See Practice Book § 25-5.

"Courts ordinarily award counsel fees in divorce cases so that a party . . . may not be deprived of [his or] her rights because of lack of funds. . . . Where, because of other orders, both parties are financially able to pay their own counsel fees they should be permitted to do so. . . . An exception to th[is] rule . . . is that an award of attorney's fees is justified even where both parties are financially able to pay their own fees if the failure to make an award would undermine [the court's] prior financial orders . . . . Whether to allow counsel fees [under §§ 46b-62 and 46b-82], and if so in what amount, calls for the exercise of judicial discretion. . . . An abuse of discretion in granting counsel fees will be found only if [an appellate court] determines that the trial court could not reasonably have concluded as it did." (Internal quotation marks omitted.) *Lopiano* v. *Lopiano*, 247 Conn. 356, 378, 752 A.2d 1000 (1998).

The defendant argues that the court's award of attorney's fees was improper because the court failed to make an explicit finding that denying the award would undermine the integrity of its other financial orders or that the plaintiff was unable to pay her fees. Contrary to the defendant's argument, our Supreme Court has specifically held that such findings do not have to be explicit as long as the record would support a finding that the party to whom the award of attorney's fees is made lacks sufficient liquid assets with which to pay his or her attorney's fees or that the failure to award such fees would undermine the court's other financial orders. *Bornemann* v. *Bornemann*, supra, 245 Conn. 544–45.

In the present case, the defendant acknowledges in his brief that the judgment essentially divided the marital assets evenly between the parties. The court's articulation reveals its concern that the defendant previously had paid more than $70,000 of his legal fees out of assets that otherwise would have been subject to distribution

between the parties. It therefore appears that the court viewed its award of $25,000 in attorney's fees to the plaintiff as a method of preventing the undermining of what it intended to be an even distribution of the marital assets between the parties. In other words, the court appears to have preserved the integrity of its other financial orders by ordering the defendant to pay $25,000 of the plaintiff's attorney's fees, thereby compensating for his previous use of marital assets to pay his attorney's fees.

The court reasonably could have concluded that the failure to award the plaintiff $25,000 in legal fees would have undermined the court's other financial orders, which essentially sought to achieve a fifty-fifty distribution of the marital property. Moreover, such a distribution was entirely reasonable in light of the court's findings regarding the defendant's responsibility for the breakdown of the marriage, the parties' relative education, skills, employability and earning capacities, and the defendant's dissipation of the parties' assets. The fact that the defendant previously had paid $35,000 of the plaintiff's legal fees does not change that conclusion. As stated, the plaintiff's testimony indicated that the $35,000 represented legal fees that the plaintiff incurred in addition to the $25,000 represented by the court's award. See footnote 3. Furthermore, contrary to the defendant's argument, his declining health and decreased earning capacity were only two of the many factors that the court was bound to consider in making its determination. See General Statutes §§ 46b-62 and 46b-82. The court was not required to view those isolated factors as dispositive. Consequently, the award of attorney's fees did not constitute an abuse of the court's discretion.

### III

The defendant claims that the court improperly ordered him to maintain his present life insurance for

the benefit of the minor children. Specifically, the defendant argues that the court's order was improper in light of his testimony that he expected the cost of his insurance to increase. We are not persuaded.

The following additional facts are relevant to that issue. At trial, the defendant testified that he had two life insurance policies with the children as his beneficiaries. The defendant testified that to the best of his understanding, the premiums on both policies would increase in three years.[5]

"Our standard of review in a domestic relations case is well settled. We will not substitute our judgment for that of the trial court and will not disturb an order of the trial court absent an abuse of discretion or findings lacking a reasonable basis in the facts. . . . An order for life insurance is very often an appropriate and necessary component of a judgment of dissolution of marriage. . . . Such an order, however, must have a reasonable basis in the evidence." (Citations omitted; internal quotation marks omitted.) *Quindazzi* v. *Quindazzi*, 56 Conn. App. 336, 338, 742 A.2d 838 (2000).

The sole authority cited by the defendant in support of his claim is *Quindazzi* v. *Quindazzi*, supra, 56 Conn. App. 336. In that case, we concluded that the trial court improperly had ordered a party to a dissolution action to

---

[5] The defendant testified as follows:

"[The Defendant]: In one of [the policies], I'm not sure whether it's Midland or Transamerica, when I be—in three years it will go up to [$12,000]—$13,000 a year.

"[The Defendant's Counsel]: In three years?

"[The Defendant]: Yeah.

"[The Defendant's Counsel]: Now, how about the other? Is there any increase in the other policy?

"[The Defendant]: The other, I think at seventy it will do the same.

"[The Defendant's Counsel]: Okay, so there would be—

"[The Defendant]: It would go up to like, [$15,000 to $20,000] to $25,000 a year."

"[The Defendant's Counsel]: And the policies show that?

"[The Defendant]: Yes."

maintain life insurance for his children because "[t]here was no evidence that the defendant had a life insurance policy at the time of the dissolution, nor was there any evidence of his insurability or the cost of the insurance as of that time." Id., 338; see also *Papa* v. *Papa*, 55 Conn. App. 47, 50–51, 737 A.2d 953 (1999).

The present case is distinguishable from *Quindazzi* and *Papa* because the defendant's testimony established that he had life insurance at the time of the dissolution. We have held that where a life insurance policy is in existence as the time of the judgment, the court has available to it all of the information necessary to craft an appropriate order regarding such insurance. *Porter* v. *Porter*, 61 Conn. App. 791, 805, 769 A.2d 725 (2001).

The defendant nevertheless asserts that the court's order was unreasonable because of his testimony that he expected his insurance premiums to increase in the years following the dissolution. The defendant's argument fails to recognize that "[i]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony and, therefore, is free to accept or reject, in whole or in part, the testimony offered by either party." (Internal quotation marks omitted.) *DiVito* v. *DiVito*, 77 Conn. App. 124, 138, 822 A.2d 294, cert. denied, 264 Conn. 921, 828 A.2d 617 (2003). The court was not required to believe the defendant's testimony regarding future increases in the cost of his life insurance. In light of the undisputed fact that the defendant had life insurance at the time of the dissolution, the court did not abuse its discretion when it ordered him to maintain that insurance for the benefit of the children, notwithstanding his speculation that the cost might increase in the future.

IV

The defendant claims that the court improperly ordered him to provide dental insurance for the minor children. Specifically, the defendant claims that the order was improper because there was no evidence regarding the availability and cost of such insurance. We disagree.

The following facts are relevant to that claim. At trial, the defendant testified that he had maintained dental insurance for the family for fifteen to twenty years until he canceled it in 1999. He had obtained the insurance through the Hartford County Medical Association, of which he was a member. He testified that if he had continued the dental coverage instead of canceling it, it would have cost him $1800 per year to cover the entire family, including the plaintiff and the children. In addition, the defendant testified that he was still a member of the Hartford County Medical Association because he had to keep that membership active to remain eligible for his medical insurance.

The defendant relies on *Lake* v. *Lake*, 49 Conn. App. 89, 91, 712 A.2d 989, cert. denied, 246 Conn. 902, 719 A.2d 1166 (1998), for the proposition that it is improper for a court to order such insurance without evidence of the cost or availability of such insurance. *Lake* is distinguishable, however, because in the present case, there was evidence from which the court could have concluded that dental insurance was available and affordable. The court had before it evidence that the defendant previously had maintained dental insurance for the family through the medical association of which he was still a member at the time of trial. The defendant also testified as to the cost of such insurance if he had continued it. The defendant does not cite any evidence suggesting that the insurance subsequently had become unavailable or unaffordable, other than his testimony

that he canceled the insurance in 1999 after the commencement of the dissolution action. Consequently, the court had an evidentiary basis for its factual determination that dental insurance was available and affordable, and the court's order requiring the defendant to obtain and to maintain such insurance for the children did not constitute an abuse of discretion.

V

The defendant claims that the court improperly determined that it would retain jurisdiction over issues with respect to the property division. We find no merit in that claim.

The court, in its memorandum of decision, ordered the defendant to transfer 50 percent of two retirement accounts to the plaintiff by way of a qualified domestic relations order.[6] With regard to each of the ordered transfers, the court stated: "The court shall retain jurisdiction." In addition, after listing several items of personal property to be retained by the defendant and ordering him to remove those items from the parties' home, the court stated: "The court shall retain jurisdiction in the event that the parties are in disagreement as to the distribution of the items specified above."

The defendant bases his claim that the court improperly retained jurisdiction on the Supreme Court's holding in *Smith* v. *Smith*, 249 Conn. 265, 752 A.2d 1023 (1999). In *Smith*, the court held that the Superior Court has statutory authority to retain continuing jurisdiction over orders for the periodic payment of permanent alimony, but not over lump sum alimony or property distri-

---

[6] "A [qualified domestic relations order (QDRO)] is the exclusive means by which to assign to a nonemployee spouse all or any portion of pension benefits provided by a plan that is governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. See 29 U.S.C. § 1056 (d) (3) (b) for the requirements of a valid QDRO." *Krafick* v. *Krafick*, 234 Conn. 783, 786 n.4, 663 A.2d 365 (1995).

butions pursuant to § 46b-81. Id., 273. Accordingly, the trial court in that case improperly attempted to retain continuing jurisdiction in order to divide the plaintiff's interest in a certain trust if ever he were to be found to hold such an interest. Id., 276.

In the present case, by contrast, the court did not attempt to retain jurisdiction to make any future orders regarding property division. With regard to the retirement accounts, the court merely retained jurisdiction to ensure the proper execution of qualified domestic relations orders, the purpose of which was to effectuate the court's orders dividing the accounts evenly, which orders the court entered at the time of dissolution. Similarly, with regard to the items of personal property that the court ordered the defendant to remove from the marital home, the court clearly stated that it retained jurisdiction only "in the event that the parties are in disagreement as to the distribution of the items . . . ." Thus, the court's retention of jurisdiction was simply for the limited purpose of effectuating the orders rendered at the time of dissolution. The court did not attempt to retain jurisdiction to make any additional orders regarding the division of property in the future. Consequently, the court's limited retention of jurisdiction did not run afoul of *Smith* and was not improper.

VI

Finally, we address the issue on which we ordered the parties to submit supplemental briefs, namely, whether the trial court lacked subject matter jurisdiction to order the defendant to make the minor children irrevocable beneficiaries of his life insurance. Specifically, we sought clarification on whether the court lacked subject matter jurisdiction, pursuant to *Broaca* v. *Broaca,* supra, 181 Conn. 463, because the order constituted an impermissible order of postmajority sup-

port. We conclude that the court did not order postmajority support.

We first note that we may address the issue although the defendant did not raise it in his principal brief. "[A] subject matter jurisdictional defect may not be waived . . . [or] conferred by the parties, explicitly or implicitly. . . . [T]he question of subject matter jurisdiction is a question of law [which may be] raised, either by a party or by the court itself . . . ." (Citations omitted; internal quotation marks omitted.) *Rayhall* v. *Akim Co.*, 263 Conn. 328, 337, 819 A.2d 803 (2003).

As stated, the court ordered the defendant to name the "minor children" as irrevocable beneficiaries of his life insurance and to provide the plaintiff, on an annual basis, with evidence that the insurance is effective.[7] Our Supreme Court held in *Broaca* v. *Broaca*, supra, 181 Conn. 463, that a trial court exceeds its subject matter jurisdiction when it makes an order of support requiring a parent to name the parties' children as irrevocable beneficiaries of a life insurance policy. That conclusion was based on the language of General Statutes § 46b-84, pursuant to which the parental duty of support extends only to a "minor child." See id., 465–66.

We conclude that the present case is distinguishable from *Broaca* because the order in the present case, when viewed in its entirety, is not an order of postmajority support. On the contrary, we conclude that the court's order, when read in its entirety, requires the defendant to maintain each child as an irrevocable beneficiary of his life insurance only until such time as that child reaches the age of majority. In that respect, we note that "[t]he construction of a judgment is a question

[7] Specifically, the court ordered: "The defendant shall maintain his present life insurance for the benefit of the minor children and name them as irrevocable beneficiaries. He shall, on an annual basis, provide the plaintiff with evidence that the insurance is effective."

of law for the court. . . . As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment." (Internal quotation marks omitted.) *Emerick* v. *Emerick*, 28 Conn. App. 794, 806, 613 A.2d 1351, cert. denied, 224 Conn. 915, 617 A.2d 171 (1992). Furthermore, "[i]n determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Rayhall* v. *Akim Co.*, supra, 263 Conn. 339.

The court's memorandum of decision specifically orders the defendant to "maintain his present life insurance for the benefit of the *minor* children . . . ." (Emphasis added.) That language may reasonably be interpreted to mean that the defendant was required to maintain his life insurance for the benefit of each child only as long as that child is a minor. Such a reading is supported by the second sentence of the court's life insurance order, which provides that the defendant "shall, on an annual basis, provide the plaintiff with evidence that the insurance is effective." We are not persuaded that the court intended to require the defendant to provide the plaintiff with proof of insurance every year, even after the children are adults and the parties' duty to provide support has terminated, because such an order would serve no purpose. The more sensible construction of the order is that the defendant has a duty to provide life insurance with respect to each individual child only while that child is a minor. That construction, by precluding the court's order from running afoul of *Broaca*, also effectuates the principle that we indulge every presumption in favor of the court's jurisdiction. See id.

We conclude that the court's order requires the defendant to maintain his life insurance for the benefit of the children only until each child reaches the age of

majority. The court's order therefore did not constitute an impermissible order of postmajority support.

The judgment is affirmed.

In this opinion the other judges concurred.