FRANCES KUNAJUKR *v.* SUTIP KUNAJUKR
(AC 23190)

Lavery, C. J., and Bishop and West, Js.

Argued March 22—officially released June 22, 2004

*Richard Hustad Miller*, for the appellant (defendant).

*Scott M. McGowan*, for the appellee (plaintiff).

*Opinion*

LAVERY, C. J. This appeal, which the defendant amended, arises from a marriage dissolution action. The defendant, Sutip Kunajukr, appeals from the judgment of the trial court dissolving his marriage to the plaintiff, Frances Kunajukr. He claims that the court

(1) improperly accepted a pendente lite agreement as a final order without his explicit consent, (2) improperly ordered him to pay child support in an amount that deviated from the child support guidelines without first stating on the record the guideline amount and (3) abused its discretion by ordering him to maintain a life insurance policy without placing the cost of such a policy on the record. By way of amended appeal, the defendant appeals from the postjudgment order awarding attorney's fees to the plaintiff to defend against his appeal. The defendant specifically claims that the court abused its discretion by awarding the plaintiff $5000 for appellate counsel fees. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the resolution of the defendant's appeal. The parties were married on January 6, 1986, in Bangkok, Thailand. They have one minor child, M, born prior to the marriage on February 10, 1985, and one minor child, S, born after the marriage on April 21, 1989. The defendant has another child, J, from his prior marriage.

The plaintiff commenced an action on July 5, 2000, seeking dissolution of the marriage on the ground of irretrievable breakdown. Although the parties offered various reasons for the breakdown of the marriage, the court found that financial issues were the cause. Pursuant to an agreement submitted by the parties, the court ordered, inter alia, that the defendant, in lieu of paying child support, continue to fund the Sutip Kunajukr Irrevocable Trust (trust).[1] The trust was to be funded by insurance premium payments on an insurance policy. The court further ordered the defendant to designate and to maintain the plaintiff as the irrevocable

[1] The terms of the trust indicated that the beneficiaries were J, who was not an issue of this marriage, in the amount of 20 percent, M in the amount of 20 percent and S in the amount of 60 percent. Both the beneficiaries and the percentages were made irrevocable.

beneficiary of his life insurance policy that was in effect at his place of employment. Additionally, the plaintiff was ordered to maintain the life insurance policy in effect at his present place of employment or to obtain a similar policy at any future place of employment at a reasonable cost until his alimony obligation terminated. The court rendered the judgment of dissolution on May 15, 2002.

The defendant filed an appeal on June 21, 2002. The plaintiff subsequently filed a postjudgment motion for attorney's fees to defend the appeal. After a hearing on the plaintiff's motion, the court awarded the plaintiff $5000 to defend the appeal. On February 11, 2003, the defendant filed an amended appeal. Additional facts will be set forth as necessary.

Before discussing the defendant's specific claims, we set forth our standard of review. "We will not reverse a trial court's rulings regarding financial orders unless the court incorrectly applied the law or could not reasonably have concluded as it did. . . . A fundamental principle in dissolution actions is that a trial court may exercise broad discretion in awarding alimony and dividing property as long as it considers all relevant statutory criteria. . . . In reviewing the trial court's decision under [an abuse of discretion] standard, we are cognizant that [t]he issues involving financial orders are entirely interwoven. The rendering of judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other. . . .

"A reviewing court must indulge every reasonable presumption in favor of the correctness of the trial court's action to determine ultimately whether the court could reasonably conclude as it did. . . . This standard of review reflects the sound policy that the trial court has the opportunity to view the parties first hand and

is therefore in the best position to assess all of the circumstances surrounding a dissolution action, in which such personal factors such as the demeanor and the attitude of the parties are so significant." (Citations omitted; internal quotation marks omitted.) *Parley* v. *Parley*, 72 Conn. App. 742, 745, 807 A.2d 982 (2002). With the foregoing principles in mind, we now turn to the specific claims of the defendant.

I

The defendant first claims that the court improperly accepted a pendente lite agreement as a final order without his explicit consent. Specifically, he argues that although the parties reached a stipulated agreement as to custody, visitation and child support, he never agreed on the record that the agreement would become part of the court's judgment. We disagree.

The following additional facts are necessary for the resolution of that issue. During the trial, the parties produced an agreement, dated February 22, 2002, that resolved certain areas of contention. Specifically, the agreement addressed custody, medical and dental insurance for the minor children and child support. The agreement provided in relevant part: "In lieu of current child support, the Defendant shall continue to fund the Sutip Kunajukr Irrevocable Trust dated June 11, 2001. Said Trust to be funded by the Defendant making the life insurance premium payments of the Jefferson Pilot Life Insurance policy with a death benefit of $800,000.00. Payments to be made throughout the minority of the minor children or to sooner terminate if payments are made in full before the majority of the minor children. . . ." The agreement required that the defendant make six annual payments of $28,000 for the policy, starting in June, 2001. The parties agreed that the defendant made the June, 2001 payment. The plaintiff, the defendant, their respective attorneys and the

attorney for the minor children all signed the agreement.

During the trial, on March 5, 2002, the parties informed the court of the signed agreement. The court reviewed the agreement on the record with the parties and requested that the parties clarify certain aspects of the agreement. At the next day of the trial, March 13, 2002, the parties informed the court that they were prepared to make certain stipulations and filed a signed copy of the redrafted agreement. The court canvassed the plaintiff regarding the agreement, and she indicated that she wanted to make it binding and part of the court's judgment. The defendant stated that he had read and understood the agreement and his obligations. He then informed the court that he wanted the court to accept the agreement and to make it an order.[2] The court subsequently accepted the agreement.

On appeal, the defendant claims that the court abused its discretion by accepting the agreement, which he characterizes as a pendente lite order, and incorporating it as part of its judgment. That argument is without merit.

"Pendente lite" is defined as "[p]ending the lawsuit; during the actual process of a suit; during litigation. . . ." Black's Law Dictionary (6th Ed. 1990). Pendente lite orders, therefore, are of a temporary nature. See *Papa* v. *Papa*, 55 Conn. App. 47, 54, 737 A.2d 953 (1999).

The agreement in this case contemplated an *additional five years* of postjudgment insurance premium

---

[2] The following colloquy occurred between the court and the defendant:

"The Court: And these payments are going to be in lieu of child support for your children?

"[The Defendant]: Yes.

"The Court: All right. And you want the court to accept this agreement and make it an order?

"[The Defendant]: Yes."

payments to fund the trust. Those payments would last throughout the minority of the children. We further note that the defendant and his counsel were present when the court canvassed the plaintiff and never objected when she agreed that the order would become part of the judgment. Additionally, in the absence of any claims for relief with respect to child support filed by the defendant, combined with the fact that the agreement was made *during* the trial, we conclude that it was well within the court's discretion to accept the agreement and to incorporate it into its judgment.

General Statutes § 46b-66 does not require an explicit canvass of the defendant. But see Practice Book §§ 39-19 and 39-20 (court must canvass defendant on record before accepting guilty plea); *State* v. *Lopez*, 77 Conn. App. 67, 71 n.7, 822 A.2d 948 (same), cert. granted on other grounds, 265 Conn. 903, 829 A.2d 421 (2003). Section 46b-66 (a) merely provides in relevant part that "[i]n any case . . . where the parties have submitted to the court an agreement concerning the custody, care, education, visitation, maintenance or support of any of their children or concerning alimony or the disposition of property, the court shall inquire into the financial resources and actual needs of the spouses and their respective fitness to have physical custody of or rights of visitation with any minor child, in order to determine whether the agreement of the spouses is fair and equitable under all the circumstances. If the court finds the agreement fair and equitable, it shall become part of the court file, and if the agreement is in writing, it shall be incorporated by reference into the order or decree of the court. . . ."

In the present case, we conclude that the court observed and complied with its statutory obligation pursuant to § 46b-66. Accordingly, the court did not abuse its discretion by incorporating the agreement into its judgment.

## II

The defendant next claims that the court improperly ordered him to pay child support in an amount that deviated from the child support guidelines without first stating on the record the guideline amount. We will not review that claim because the defendant failed to submit a child support guidelines form as required by Practice Book § 25-30 (e).[3]

In *Favrow* v. *Vargas*, 231 Conn. 1, 29, 647 A.2d 731 (1994), our Supreme Court stressed adherence by the trial court to observe the procedures set out in the child support guidelines to facilitate appellate review. Recently, in *Bee* v. *Bee*, 79 Conn. App. 783, 787–88, 831 A.2d 833, cert. denied, 266 Conn. 932, 837 A.2d 805 (2003), we concluded that a party who fails to submit a child support guidelines worksheet is precluded from complaining of the alleged failure of the trial court to comply with the guidelines and that we will not review such a claim. The defendant has failed to provide any meaningful distinction between this case and the facts of *Bee*. Accordingly, we decline to review his claim.[4]

## III

The defendant next claims that the court abused its discretion by ordering him to maintain a life insurance

[3] The child support guidelines worksheet is set forth in § 46b-215a-5a of the Regulations of Connecticut State Agencies.

[4] It would appear that on the basis of the financial affidavits submitted, this case falls outside the parameters of the child support guidelines because the parties' net weekly income exceeds $2500. Section 46b-215a-2a (a) (2) of the Regulations of Connecticut State Agencies provides that "[w]hen the parents' combined net weekly income exceeds $2,500, child support awards shall be determined on a case-by-case basis, and the current support prescribed at the $2,500 net weekly income level shall be the minimum presumptive amount." See also *Homans* v. *Homans*, Superior Court, judicial district of New London, Docket No. 120749 (April 11, 2003) ("income of the father is above the maximum amount contemplated by the child support guidelines and therefore they do not apply"); *Cohen* v. *Hanley*, Superior Court, judicial district of Fairfield, Docket No. 311585 (January 7, 2003) ("[d]ue to the parties' income, the child support guidelines do not apply").

policy without placing the cost of such a policy on the record. Specifically, the defendant argues that there is no evidentiary record as to the cost of continuing the insurance policy and, therefore, it was improper for the court to order that he maintain life insurance. We disagree.

In its memorandum of decision, the court ordered the defendant to "designate and maintain the plaintiff as irrevocable beneficiary of his life insurance policy presently in force at his place of employment . . . and/or any other life insurance policy provided at any future place of employment at a reasonable cost until his obligation to pay alimony terminates. . . ."

"An order for life insurance is very often an appropriate and necessary component of a judgment of dissolution of marriage. . . . Such an order, however, must have a reasonable basis in the evidence." (Citation omitted; internal quotation marks omitted.) *Quindazzi* v. *Quindazzi*, 56 Conn. App. 336, 338, 742 A.2d 838 (2000). We have held that it is reversible error for the court to order a party to obtain new or additional life insurance without evidence of the availability and cost of that insurance. See, e.g., *Parley* v. *Parley*, supra, 72 Conn. App. 746; *Quindazzi* v. *Quindazzi*, supra, 338; *Papa* v. *Papa*, supra, 55 Conn. App. 50–52; *Lake* v. *Lake*, 49 Conn. App. 89, 92, 712 A.2d 989, cert. denied, 246 Conn. 902, 719 A.2d 1166 (1998); *Wolf* v. *Wolf*, 39 Conn. App. 162, 171–72, 664 A.2d 315 (1995). Those cases, however, are distinguishable from the case before us.

The defendant had a life insurance policy in effect at his place of employment, Lawrence and Memorial Hospital in New London, at the time of the dissolution. He was not required to obtain new or additional insurance. "[O]rders requiring the maintenance of life insurance have been approved on numerous occasions by our courts. . . . [H]owever, it is important to note that

the life insurance policy was in existence at the time of the judgment. The trial court in each of these cases, therefore, had available to it all of the information necessary to craft an appropriate order regarding such insurance." (Citations omitted; internal quotation marks omitted.) *Porter* v. *Porter*, 61 Conn. App. 791, 805, 769 A.2d 725 (2001).

In *Porter*, we stated that "the life insurance . . . was in existence at the time of the judgment. Through his financial affidavit, the defendant represented to the court that he had two existing life insurance policies. The court ordered that the defendant maintain one such policy for the benefit of the children. It changed neither the value nor any other condition of the life insurance that would affect its availability to the defendant. Under those circumstances, we conclude that the court had available to it all of the information necessary to craft an appropriate order regarding the life insurance." Id., 806; see also *Bee* v. *Bee*, supra, 79 Conn. App. 794.

Similarly, in the present case, the defendant represented through his financial affidavit that he possessed a life insurance policy at the time of the dissolution. Thus, we conclude that the court did not abuse its discretion by ordering the defendant to maintain his life insurance policy.

IV

The defendant's final claim is that the court abused its discretion by awarding the plaintiff $5000 for appellate counsel fees. We disagree.

The following additional facts are necessary for the resolution of that claim. The defendant filed his appeal from the dissolution judgment on June 21, 2002. On October 11, 2002, the plaintiff filed a motion for attorney's fees and costs to defend the appeal. On November 19, 2002, after a hearing, the court granted the plaintiff's

motion and ordered the defendant to pay $5000. The defendant filed a motion for articulation of the order, and the court filed its articulation on March 24, 2003. In its articulation, the court stated that it considered the financial abilities of the parties and the criteria set forth in the General Statutes.[5] The court determined that the parties had different financial abilities, based primarily on the fact that the plaintiff had an earning capacity of $8 per hour and had not been employed since 1988. The defendant earned more than $200,000 per year as a physician. The court concluded by stating that although the plaintiff would receive certain stocks and deferred compensation, at the present time she did not have ample liquid funds to defend against the appeal. On the basis of her financial affidavit, the court found that she was $43,000 in debt with only $5000 in her checking account, with her sole income being alimony in the amount of $640 per week. The defendant's motion for further articulation was denied on April 21, 2003.

"Courts ordinarily award counsel fees in divorce cases so that a party . . . may not be deprived of [his or] her rights because of lack of funds. . . . Where, because of other orders, both parties are financially able to pay their own counsel fees they should be permitted to do so. . . . *Koizim* v. *Koizim*, 181 Conn.

---

[5] "Pursuant to General Statutes § 46b-62, the trial court 'may order either spouse . . . to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82. . . .' General Statutes § 46b-82 provides that '[i]n determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party . . . shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81 . . . .' " *Issler* v. *Issler*, 50 Conn. App. 58, 70, 716 A.2d 938 (1998), rev'd on other grounds, 250 Conn. 226, 737 A.2d 383 (1999).

492, 501, 435 A.2d 1030 (1980). An exception to the rule announced in *Koizim* is that an award of attorney's fees is justified even where both parties are financially able to pay their own fees if the failure to make an award would undermine its prior financial orders . . . . Whether to allow counsel fees [under General Statutes §§ 46b-62 and 46b-82], and if so in what amount, calls for the exercise of judicial discretion. . . . An abuse of discretion in granting counsel fees will be found only if [an appellate court] determines that the trial court could not reasonably have concluded as it did." (Citations omitted; internal quotation marks omitted.) *Sachs* v. *Sachs*, 60 Conn. App. 337, 347–48, 759 A.2d 510 (2000); see also *Lambert* v. *Donahue*, 69 Conn. App. 146, 150, 794 A.2d 547 (2002).

On the basis of our review of the record, we cannot conclude that the court abused its discretion when it determined that the plaintiff lacked sufficient or ample liquid funds to defend the appeal and ordered the defendant to pay $5000 to the plaintiff's attorney.

The judgment is affirmed.

In this opinion the other judges concurred.