******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

FREDERICK ANDERSON *v.* MARILYN ANDERSON
(AC 36338)

Lavine, Mullins and Schaller, Js.

*Argued January 22—officially released October 13, 2015*

(Appeal from Superior Court, judicial district of Fairfield, Hon. Howard T. Owens, Jr., judge trial referee.)

*Richard C. Marquette*, for the appellant (plaintiff).

*James A. Cuddy*, for the appellee (defendant).

*Opinion*

SCHALLER, J. The plaintiff, Frederick Anderson, appeals from the judgment of the trial court dissolving his marriage to the defendant, Marilyn Anderson, and issuing certain financial orders. Specifically, the plaintiff claims that the court erred by (1) awarding $43,158.65 from the plaintiff's retirement account to the defendant, (2) awarding alimony to the defendant, while not awarding alimony to the plaintiff, (3) awarding the defendant certain real property in Jamaica, and (4) awarding attorney's fees to the defendant. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our review of the plaintiff's claims. In its memorandum of decision dated October 22, 2013, the court found that the plaintiff was "clearly responsible for the breakdown of the marriage," as a result of an admission by the plaintiff regarding multiple sexual relationships with other women. The court additionally found that there was one child of the marriage, who was twenty years old and presently enrolled in college. As it related to the finances of the parties, the court found that the plaintiff had a retirement account with a value of $95,643.97 and that the defendant had a total of $29,326.67 in two retirement accounts and would receive pension benefits upon retirement that would pay her $516.88 per month. The court further found, in relation to the marital property distribution, that the plaintiff was the sole owner of property located at 64 Terry Place in Bridgeport and that property in St. Mary, Jamaica was owned jointly by the parties.

The court then issued orders after considering the relevant statutory provisions, as well as the parties' assets, liabilities, income, and expenses. Specifically, the court ordered that the property located at 64 Terry Place, the marital home, was to remain the exclusive property of the plaintiff, and the property located at 633 North Ridgefield Road in Bridgeport was awarded to the defendant. Neither party was to be responsible for expenses related to the respective property of the other. The court ordered that the plaintiff's interest in the property in St. Mary, Jamaica, be transferred to the defendant. The court also ordered that the plaintiff pay the defendant $1 per year in alimony for a period of ten years from the date of judgment and $2500 toward the attorney's fees of the defendant. The court ordered that the defendant would retain her pension, with no claim to it by the plaintiff. The court lastly ordered the plaintiff to transfer to the defendant, by way of a qualified domestic relations order, $43,158.65, "due to an outstanding loan of $20,000 in order to equalize the parties' retirement accounts." The plaintiff filed the present appeal, challenging these financial orders.

We begin by setting forth the relevant standard of

review. "[I]n domestic relations cases . . . this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case . . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Notwithstanding the great deference accorded the trial court in dissolution proceedings, a trial court's ruling . . . may be reversed if, in the exercise of its discretion, the trial court applies the wrong standard of law." (Citations omitted; internal quotation marks omitted.) *Maturo* v. *Maturo*, 296 Conn. 80, 87–88, 995 A.2d 1 (2010).

With respect to the factual predicates for financial awards, the distribution of property and the underlying rationale for awarding attorney's fees, our standard of review is clear. "This court may reject a factual finding if it is clearly erroneous, in that as a matter of law it is unsupported by the record, incorrect, or otherwise mistaken. . . . This court, of course, may not retry a case. . . . The fact-finding function is vested in the trial court with its unique opportunity to view the evidence presented in a totality of circumstances, i.e., including its observations of the demeanor and conduct of the witnesses and parties, which is not fully reflected in the cold, printed record which is available to us. Appellate review of a factual finding, therefore, is limited both as a practical matter and as a matter of the fundamental difference between the role of the trial court and an appellate court. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Sabrowski* v. *Sabrowski*, 105 Conn. App. 49, 53, 935 A.2d 1037 (2007).

General Statutes § 46b-81 (c) provides in relevant part that "the court, after considering all the evidence presented by each party, shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates." Furthermore, "[o]ur jurisprudence requires the trial court to consider all the statutory criteria set forth in . . . § 46b-81 in determining how to distribute parties' assets in a disso-

lution action. . . . We do not, however, require that courts ritualistically recite the criteria they considered, nor are they bound to any specific formula respecting the weight to be accorded each factor." (Citation omitted; footnote omitted.) *Casey* v. *Casey*, 82 Conn. App. 378, 384, 844 A.2d 250 (2004).

I

The plaintiff first claims that the court abused its discretion when it failed to consider evidence presented at trial and awarded the defendant $43,158.65 from his retirement account. He argues that the court's attempt to "equalize the parties' retirement accounts" failed to take into consideration outstanding loans by both parties, rather than just those of the plaintiff. Put another way, the plaintiff claims that the court's financial orders were logically inconsistent with the evidence presented to the court, and, therefore, it could not reasonably have concluded as it did.

Although § 46b-81 (c) requires the trial court to evaluate certain factors before distributing the parties' assets in a marital dissolution action, it has broad discretion when applying the statutory factors to assign the parties' assets. See *Emanuelson* v. *Emanuelson*, 26 Conn. App. 527, 530, 602 A.2d 609 (1992). We also note that "[t]he scope of our review of the trial court's exercise of its broad discretion in domestic relations cases is limited to a determination of whether the court's conclusions were correct on the law and reasonably reached on the evidence. . . . The trial court has the best opportunity to observe the parties, pass on the credibility of witnesses, and weigh and interpret the evidence. . . . We will indulge every reasonable presumption that the court's action was correct." (Internal quotation marks omitted.) *Collucci* v. *Collucci*, 33 Conn. App. 536, 540, 636 A.2d 1364 (1994).

The court received exhibits and heard testimony regarding the retirement funds of the parties. The plaintiff testified that the market value of his retirement account was $116,239.06, with a loan balance of $20,595.09, which was the result of a loan he took out for his brother. The plaintiff further testified that he borrowed an additional $11,095.54 against his retirement account to buy a car for his personal use. The defendant testified that she did not know whether her retirement account balance ever exceeded $60,000, but that she withdrew $27,000 to assist with household bills after the plaintiff vacated the marital residence. In addition, the defendant testified that she withdrew $10,000 from her account to purchase a car for the parties' daughter. In sum, the evidence showed that the defendant's withdrawals from her retirement account were for marital and household bills, whereas the plaintiff's withdrawals were for personal expenses, unrelated to the interests of the family.

In the present case, although the plaintiff argues that the order regarding the retirement accounts was inconsistent with the facts presented at trial, we conclude that the trial court's award was supported by the evidence, and its conclusions and orders were in accordance with applicable law. The court therefore did not abuse its discretion in awarding the defendant $43,158.65 from the plaintiff's retirement account.

II

The plaintiff next claims that the court abused its discretion by awarding alimony to the defendant and not awarding alimony to him.[1] Because this claim requires two distinct inquiries, we determine first whether the court acted improperly when it awarded alimony to the defendant, and then we determine whether it acted improperly when it did not award alimony to the plaintiff.

We begin by setting forth the principles necessary to review both claims. "A fundamental principle in dissolution actions is that a trial court may exercise broad discretion in awarding alimony and dividing property as long as it considers all relevant statutory criteria. . . . In reviewing the trial court's decision under [an abuse of discretion] standard, we are cognizant that [t]he issues involving financial orders are entirely interwoven. The rendering of judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other." (Internal quotation marks omitted.) *Cimino* v. *Cimino*, 155 Conn. App. 298, 303, 109 A.3d 546 (2015). In addition, we note that the statutory factors for determining alimony in General Statutes § 46b-82[2] are almost identical to the factors used to distribute property in § 46b-81 (c). See *Emanuelson* v. *Emanuelson*, supra, 26 Conn. App. 531.

Additional facts are necessary for the resolution of these claims. Our review of the record reveals that there was evidence before the court on which it reasonably could have based its orders. The court heard testimony as it related to the parties' income and use of marital funds. At the time of trial, the plaintiff was forty-six years old, the defendant was forty-nine years old, and the parties' daughter was twenty years old. The plaintiff worked as a tax analyst for Loews Corporation in New York, New York, and the defendant worked as a registered nurse at Bronx Lebanon Hospital in Bronx, New York. The plaintiff reported a net weekly income of $567.48, and the defendant reported a net weekly income of $1474.47. The plaintiff testified that the parties' daughter was in college and working, and that the defendant was paying for the majority of the daughter's expenses that were not covered by the daughter's income.

The plaintiff further testified that he earned addi-

tional income by preparing tax returns for individuals outside of the purview of his employment. The plaintiff conceded that he had two extramarital affairs during the course of the marriage, which the court determined resulted in the breakdown of the marriage. In April, 2007, the plaintiff had wired $21,000 to a third party for an investment; all of those funds were lost. In addition, the plaintiff had received more than $51,000 from a refinance and equity loan taken against the marital residence, but none of the funds received were used for marital expenses or for the benefit of the parties' child. Finally, the plaintiff was contributing $172 per week to his retirement account, which was not included on his financial affidavit.

A

We first address the court's award of alimony to the defendant. The plaintiff claims that, considering the factual record, the court could not have reasonably concluded as it did.

The plaintiff acknowledges that the court has broad discretion to apply the applicable statutory provision, § 46b-82, and it is *not* required to make explicit findings regarding each or any of the prescribed factors. See *Greco* v. *Greco*, 70 Conn. App. 735, 740, 799 A.2d 331 (2002). In reliance on *deCossy* v. *deCossy*, 172 Conn. 202, 204–205, 374 A.2d 182 (1977), he argues, however, that the only question is "whether the court could have reasonably concluded as it did."

The court heard testimony and made findings related to the statutory considerations of § 46b-82, including testimony regarding the twelve year duration of the parties' marriage, the breakdown of the marriage as a result of the plaintiff's infidelity, the respective ages and health of the parties, the current occupations as a tax analyst (plaintiff) and nurse (defendant), the plaintiff's potential for increased income preparing tax returns for individuals outside of the purview of his employment, the assets and debts of the parties, and the defendant's financial support of the parties' daughter.

Our review of the record indicates that the court properly considered these factors in determining whether to award alimony, and that it reasonably concluded, on the basis of the evidence and in light of § 46b-82, that the defendant should be awarded $1 per year in alimony.

B

We next address the court's decision not to award alimony to the plaintiff. The plaintiff asserts that although courts have broad discretion in determining whether to award alimony under § 46b-82, he merited spousal support pursuant to *O'Neill* v. *O'Neill*, 13 Conn. App. 300, 313, 536 A.2d 978 ("[t]he unambiguous purpose of rehabilitative alimony is to allow the recipient spouse to attain self-sufficiency"), cert. denied, 207

Conn. 806, 540 A.2d 374 (1988).

In *O'Neill*, this court stated that "the purpose of the rehabilitative alimony [award] was to allow the plaintiff to finish her nursing training or other training so that she may obtain permanent employment." Id. In the present case, the plaintiff failed to produce evidence that he required spousal support in order to attain self-sufficiency. Evidence was offered at trial that the plaintiff solely owned the property at 64 Terry Place in Bridgeport, which he was awarded by the court, and that he had a retirement account valued at $95,643.97, and the court ordered that he was to retain his 2006 Chrysler Town & Country vehicle. Furthermore, the evidence indicated that the plaintiff borrowed funds against the equity of the marital home and from joint accounts, without providing any of the funds to the defendant. The plaintiff also conceded that he stopped making mortgage payments or contributing to any household expenses at the marital home more than a year prior to the date of dissolution, resulting in a large arrearage on the mortgage. In addition, the defendant testified that she was the sole source of financial support of the parties' daughter while she attended college. Finally, the plaintiff had elected to contribute $172 per week to his retirement account, thereby significantly reducing his available income. Unlike in *O'Neill*, the plaintiff in the present case is fully employed and demonstrated no need for rehabilitative alimony.

The court heard extensive testimony, as we reiterated, which is sufficient to support its factual findings and financial awards. We conclude that the plaintiff failed to demonstrate that he should prevail on his claim that the court abused its discretion when it did not award alimony to him.

### III

The plaintiff next claims that the court erred when it awarded certain real property in Jamaica to the defendant. Specifically, the plaintiff argues that the court's award of the Jamaican property to the defendant, "absent any finding of value or legal status . . . was an abuse of discretion." The evidence presented at trial indicated that the defendant inherited the property from her father, but due to marital property ownership laws in Jamaica, the plaintiff's name also was included on the deed.

"In distributing the assets of the marital estate, the court is required by § 46b-81 to consider the estate of each of the parties. Implicit in this requirement is the need to consider the economic value of the parties' estates. *The court need not, however, assign specific values to the parties' assets.*" (Emphasis added.) *Bornemann* v. *Bornemann*, 245 Conn. 508, 531, 752 A.2d 978 (1998). Section 46b-81 provides in relevant part that "[a]t the time of entering a decree . . . dissolving a

marriage . . . pursuant to a complaint under section 46b-45, the Superior Court may assign to either spouse all or any part of the estate of the other spouse. . . ." The assignment of property under § 46b-81 requires the court to make three determinations: (1) whether something is property within the meaning of § 46b-81, (2) an appropriate method for valuing the property, and (3) the most equitable distribution of the property. *Krafick* v. *Krafick*, 234 Conn. 783, 792–93, 663 A.2d 365 (1995). Our Supreme Court has held that "[t]he trial court's findings will be overturned only if it misapplies, overlooks, or gives a wrong or improper effect to any test or consideration which it was [its] duty to regard. . . . As with other questions of fact, unless the determination by the trial court is clearly erroneous, it must stand." (Citation omitted; internal quotation marks omitted.) *Bornemann* v. *Bornemann*, supra, 532.

The plaintiff does not dispute that the property in Jamaica is "property" within the meaning of § 46b-81; instead, he argues that the court abused its discretion by failing to consider the second step of the previously mentioned process, and, therefore, improperly awarded the property to the defendant. Specifically, the plaintiff argues that the court did not have sufficient evidence from which to determine the value of the property and, therefore, lacked the ability to equitably dispose of the property. We disagree.

At the outset, we note that, as a general proposition, "the trial court need not necessarily specify a valuation method used. Nor is the court required to set forth specific factors that were considered in arriving at that determination." (Internal quotation marks omitted.) *Brooks* v. *Brooks*, 121 Conn. App. 659, 667, 997 A.2d 504 (2010). In this case, neither party provided the court with expert testimony regarding the value of the property in Jamaica. As a result, the court was left to rely upon the testimony of the parties and its general knowledge to establish the value of the property. See *Porter* v. *Porter*, 61 Conn. App. 791, 800, 769 A.2d 725 (2001); see also *Watson* v. *Watson*, 20 Conn. App. 551, 560, 568 A.2d 1044 (1990) (owner of property is competent to testify as to its market value), rev'd in part on other grounds, 221 Conn. 698, 607 A.2d 383 (1992). The plaintiff testified that the property had a value of $55,000, which he ascertained by going to Jamaica and inquiring about comparable properties. He further testified that he believed $55,000 was a conservative estimate. According to the defendant, the property was worth $9690 based on a purchase price in Jamaican dollars and a subsequent conversion to United States dollars. She testified that she inherited the historically owned family property and that the plaintiff did not contribute any funds to the purchase of the property. The defendant further testified that the only reason that the property was in both parties' names was that in Jamaica, married parties were required to own property jointly.[3]

The plaintiff also seeks to distinguish the present case from *Bornemann* v. *Bornemann*, supra, 245 Conn. 508. In *Bornemann*, our Supreme Court stated, in relation to stock options determined to be distributable marital property, that "[a]lthough the evidence before the court as to the value of the fourth and fifth flights of stock options certainly could have been provided in much greater detail and with much greater precision—perhaps by an expert witness who could have offered projections as to the present value of [those] flights of stock opitions—neither party chose to introduce such evidence." Id., 534. The court further stated that "[b]oth parties in a dissolution proceeding are required to itemize all of their assets in a financial affidavit and to provide the court with the approximate value of each asset. . . . If the parties fail to do so, the equitable nature of the proceedings precludes them from later seeking to have the financial orders overturned on the basis that the court had before it too little information as to the value of the assets distributed. In this case, it was not a misapplication of the law for the trial court to have valued the asset on the basis of the scant evidence provided and to have distributed the asset on the basis of that valuation. The fact that neither party advocated a sophisticated method of valuation nor provided any particularly detailed or precise evidence of value . . . did not preclude the trial court from equitably distributing those options." Id., 535–36.

The plaintiff argues that, unlike in *Bornemann*, the evidence offered at trial in the present case was confusing and vague, and, therefore, the court could not have reasonably arrived at an adequate valuation. We disagree.

In its memorandum of decision, the court indicated that it had carefully considered the criteria set forth in §§ 46b-81 and 46b-82; at trial, it heard testimony regarding the legal status and value of the property by both parties. Thereafter, the court awarded the property in Jamaica to the defendant. On the basis of our review of the record and in light of the testimony of the parties as set forth previously, we conclude that the court did not abuse its discretion in awarding this property to the defendant.

IV

The plaintiff finally claims that the court abused its discretion when it awarded attorney's fees to the defendant.[4] Specifically, he claims that, pursuant to *Maguire* v. *Maguire*, 222 Conn. 32, 44–45, 608 A.2d 79 (1992), the court was required to find that an award of attorney's fees was necessary to avoid undermining its other financial awards. According to the plaintiff, the court made no explicit finding that the defendant lacked sufficient liquid assets to pay her own legal fees or that failing to award fees would undermine its other orders.

He further contends that the record does not support such a conclusion. The defendant counters by arguing that, pursuant to *Ramin* v. *Ramin*, 281 Conn. 324, 915 A.2d 790 (2007), the award of attorney's fees was proper as she incurred substantial fees due to the egregious litigation misconduct of the plaintiff. Although the defendant's reliance on *Ramin* is misplaced,[5] we conclude that the record supports a finding that the failure to award the defendant $2500 would have undermined the court's other financial orders, and, therefore, the court did not abuse its discretion by awarding attorney's fees to the defendant. See *Bee* v. *Bee*, 79 Conn. App. 783, 791, 831 A.2d 833, cert. denied, 266 Conn. 932, 837 A.2d 805 (2003), overruled in part on other grounds by *Tuckman* v. *Tuckman*, 308 Conn. 194, 202 n.6, 61 A.3d 449 (2013).

"The general rule of law known as the American rule is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception. . . . This rule is generally followed throughout the country. . . . Connecticut adheres to the American rule. . . . There are few exceptions. For example, a specific contractual term may provide for the recovery of attorney's fees and costs . . . or a statute may confer such rights. (Internal quotation marks omitted.) *Giordano* v. *Giordano*, 153 Conn. App. 343, 352–53, 101 A.3d 327 (2014).

General Statutes § 46b-62 authorizes the trial court to order payment of attorney's fees in dissolution actions.[6] See *Altraide* v. *Altraide*, 153 Conn. App. 327, 337, 101 A.3d 317, cert. denied, 315 Conn. 905, 104 A.3d 759 (2014). "Whether to allow counsel fees [under §§ 46b-62 and 46b-82], and if so in what amount, calls for the exercise of judicial discretion. . . . An abuse of discretion in granting counsel fees will be found only if [an appellate court] determines that the trial court could not reasonably have concluded as it did." (Internal quotation marks omitted.) *Vanicky* v. *Vanicky*, 128 Conn. App. 281, 284, 18 A.3d 602 (2011).

"[T]he general rule under *Maguire* [v. *Maguire*, supra, 222 Conn. 32] is that an award of attorney's fees in a marital dissolution case is warranted only when at least one of two circumstances is present: (1) one party does not have ample liquid assets to pay for attorney's fees; or (2) the failure to award attorney's fees will undermine the court's other financial orders." *Ramin* v. *Ramin*, supra, 281 Conn. 352; see also *Kupersmith* v. *Kupersmith*, 146 Conn. App. 79, 96–97 n.13, 78 A.3d 860 (2013).

The following additional facts are necessary for the resolution of this issue. During closing argument, the defendant's counsel stated: "In regards to the [claim for] attorney's fees, [the defendant] is seeking $5000 toward her attorney's fees. For one point, we had to come in on two separate occasions because due to the

fact [that the plaintiff] represented himself, he never informed my client or myself that he was moving forward with a motion . . . . He provided no documentation that he ever spoke to me, sent me an e-mail, a letter, anything stating that he was moving forward with his motion.

"Due to that fact, Your Honor entered orders where [the plaintiff] misrepresented to the court that he had informed me, and I, as a commissioner of the Superior Court, can let you know . . . and have, that he never informed me. Cost my client numerous hours, a least a couple of thousand dollars for me to come down the day the order was entered and return to court and argue the motion to open . . . which we did that day, which took several hours because after you had entered orders, Your Honor, and we were walking out of the courthouse, [the plaintiff] started walking in. So, we are seeking attorney's fees for that . . . ."

The motion that the defendant's counsel referred to in closing argument had been filed by the plaintiff to have the defendant pay approximately $16,000 for the mortgage of the marital home from October, 2012, through September, 2013. The plaintiff had left the marital home in October, 2012 while the defendant remained in the home. In August, 2013, the defendant moved to a new home, and at that time, the plaintiff returned to the marital home. The plaintiff filed his motion seeking payment of approximately $16,000 and failed to inform the defendant or her counsel that argument on his motion would be heard by the court. In August, 2013, without either the defendant or the defendant's counsel being present, the court granted the plaintiff's motion. The defendant's counsel subsequently filed a motion to reargue, which the court granted. The court also vacated its prior order and denied the plaintiff's motion for payment of approximately $16,000 by the defendant.

In its memorandum of decision, the court specifically indicated that it had considered the statutory criteria of §§ 46b-81 and 46b-82, as well as the assets, liabilities, income and expenses of the parties. It ordered that the plaintiff "pay $2500 toward the [defendant's] attorney's fees within 30 days from date of this judgment."

The court heard evidence that the actions of the plaintiff, although not egregious litigation conduct, unnecessarily increased the legal fees incurred by the defendant. The court also heard evidence that the plaintiff had received additional income for completing tax returns for individuals, and this income was not listed on his financial affidavit. Finally, the court specifically found the plaintiff at fault for the breakdown of the marriage, and it had uncontested evidence of his extramarital affairs. A reading of the court's decision reveals a deliberate and conscious effort to divide the marital estate as equitably as possible between the parties. Consistent with that objective, the court awarded the defendant

50 percent of the attorney's fees that she had requested. To disallow that award would undermine the court's other financial orders. Under these facts and circumstances, and mindful of our deferential standard of review, we cannot conclude that the court abused its discretion in ordering the plaintiff to pay $2500 toward the defendant's attorney's fees.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Although, the plaintiff additionally argues that the court's alimony order was clearly erroneous, he fails to offer a sufficient analysis in support of such a claim. See *Nowacki* v. *Nowacki*, 129 Conn. App. 157, 163, 20 A.3d 702 (2011) ("It is well settled that [w]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." [Internal quotation marks omitted.]).

[2] General Statutes § 46b-82 provides in relevant part: "(a) At the time of entering the decree, the Superior Court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. . . . In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall consider the evidence presented by each party and shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81 . . . ."

[3] The defendant further testified that there were complications with the land records, stemming from the mishandling by and death of the individual responsible for managing the sale of the property.

[4] The plaintiff also argues that the court's determination was clearly erroneous, but fails to offer a sufficient analysis. We, therefore, decline to review this claim. See *Nowacki* v. *Nowacki*, 129 Conn. App. 157, 163, 20 A.3d 702 (2011); see footnote 1 of this opinion.

[5] In *Berzins* v. *Berzins*, 306 Conn. 651, 657, 51 A.3d 941 (2012), our Supreme Court expressly limited the application of *Ramin* to instances of discovery misconduct. See also *Perry* v. *Perry*, 312 Conn. 600, 629, 95 A.3d 500 (2014); *Rousseau* v. *Rousseau*, 148 Conn. App. 837, 852, 88 A.3d 559 (2014).

[6] General Statutes § 46b-62 (a) provides in relevant part: "In any proceeding seeking relief under the provisions of this chapter and sections 17b-743, 17b-744, 45a-257, 46b-1, 46b-6, 46b-212 to 46b-213w, inclusive, 51-348a and 52-362, the court may order either spouse or, if such proceeding concerns the custody, care, education, visitation or support of a minor child, either parent to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82. . . ."