BERTHA GENTILE *v.* DOMINGOS CARNEIRO
(AC 28165)
(AC 28270)

McLachlan, Beach and Pellegrino, Js.

Argued January 4—officially released May 13, 2008

*John A. Pinheiro* filed a brief for the appellant (defendant).[1]

*Hugh D. Hughes*, with whom, on the brief, were *William F. Gallagher* and *Jacqueline F. Barbara*, for the appellee (plaintiff).

*Opinion*

PELLEGRINO, J. In this consolidated appeal, the defendant, Domingos Carneiro, appeals from orders made regarding the custody and support of the parties' minor children. On appeal, the defendant claims that the trial court (1) improperly determined his earning capacity to be $75,000, (2) improperly issued a supplemental support order applicable to his future commissions, (3) abused its discretion in awarding sole legal custody of his three minor children to the plaintiff, Bertha Gentile, (4) improperly awarded attorney's fees to the plaintiff and (5) improperly calculated his modified support obligation. We affirm in part and reverse in part the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. The plaintiff and the defendant engaged in a three and one-half year relationship that produced three children. The plaintiff and the parties' three children currently live

---

[1] The defendant's attorney failed to appear on the date scheduled for oral argument. The clerk of the court was able to reach him telephonically, and counsel stated that he would not be in attendance. He did not request a postponement, and the matter proceeded as scheduled in his absence.

in Arizona,[2] while the defendant resides in Connecticut. The parties are not, and never have been, married to each other.

On August 17, 2004, the plaintiff filed a complaint for sole custody, support and other relief for her three minor children born of the defendant. Protracted discovery ensued, and, on September 20, 2006, the court held its final hearing on the plaintiff's complaint.[3] At that hearing, the plaintiff and the defendant testified and also offered the testimony of one witness each.

On September 28, 2006, the court issued its memorandum of decision. The court found that beginning in 1989, the defendant operated his own carting business, known as D.C. Carting, Inc. (D.C. Carting). During the years 2001 through 2004, his net personal income from his carting business fluctuated from $80,000 to $278,000.[4] On December 31, 2005, D.C. Carting went out of business, and the defendant did not thereafter engage in other full-time employment. On the basis of the defendant's background and experience, the court imputed to him an earning capacity of at least $75,000 per year.

The court found that the plaintiff has three children from a prior marriage and currently lives in Arizona with her husband and six children. Her only sources

---

[2] At the time the complaint was filed, the three minor children were residents of Connecticut.

[3] The facts of this case reveal that the defendant failed to comply with many of the plaintiff's discovery requests. In addition, on four separate occasions, the court ordered the defendant to provide the plaintiff with certain financial documents that were requested by her accountant and needed to value his business. The defendant failed to comply fully with the court's orders. The record also reveals that the plaintiff filed fourteen motions for contempt against the defendant.

[4] The court also found that the defendant had income and assets that he failed to disclose on his financial affidavit. In particular, the court found that the defendant receives additional cash income from garbage pickups that he makes but cannot provide accurate, reliable or credible figures as to how much cash he receives in this manner.

of income are the pendente lite child support payments received from the defendant and $157 weekly child support received from her previous husband. The plaintiff is not employed and is a homemaker.

The court then made twelve separate orders, four of which are relevant to the defendant's appeal. Specifically, the court ordered that (1) the plaintiff shall have sole legal and physical custody of the minor children, (2) the defendant shall pay $350 per week to the plaintiff for current child support, (3) the defendant shall pay, within ninety days, $6125 toward the plaintiff's counsel fees and (4) the defendant shall pay, within ninety days, $5000 toward costs incurred by the plaintiff.

On October 3, 2006, the defendant filed a motion to reargue, claiming, in part, that he has three additional minor children who are not the issue of the plaintiff and who were not accounted for in the court's ruling. The court granted the defendant's motion to reargue limited to the issues regarding the actual number of children that the defendant has and the amount of the child support award. On October 23, 2006, before the parties reargued the case, the defendant filed an appeal, with the docket number AC 28165, in which he challenged the court's September 28, 2006 ruling. On November 6, 2006, after the parties reargued the case, the court modified its weekly child support order to $346, retroactive to the date of its initial support order, to account for the defendant's three additional children.

The next day, November 7, 2006, the defendant filed a motion for modification of the court's support order on the basis of a substantial change in circumstances.[5]

---

[5] General Statutes § 46b-86 (a) permits the court to modify child support orders in two alternative circumstances. Pursuant to this statute, a court may not modify a child support order unless there is first either "(1) a showing of a substantial change in the circumstances of either party or (2) a showing that the final order for child support substantially deviates from the child support guidelines . . . ." *Santoro* v. *Santoro*, 70 Conn. App. 212, 218, 797 A.2d 592 (2002). "Both the substantial change of circumstances

The defendant claimed that his income was substantially lower than the $75,000 earning capacity the court imputed to him. On November 21, 2006, before the court ruled on the defendant's motion for modification, he filed a second appeal, with docket number AC 28270, which raised the same issues that were raised in AC 28165. On January 18, 2007, the court held a hearing on the defendant's motion for modification.

On February 21, 2007, the court issued its ruling on the defendant's motion for modification. The court found that the defendant currently is employed by Associated Carting, doing collections, sales dispatch and solicitation of new accounts. His gross weekly income from his employment is $600, and his net weekly income is $508. In addition to his weekly income, the defendant is entitled to a commission on an annualized basis. His commission is equal to one sixth of the value of all new accounts he solicits that continue to do business with Associated Carting for at least one year, minus $2000.

On the basis of the defendant's net weekly income of $508, the court ordered the defendant to pay $207 per week as child support. The court also issued a supplemental order requiring the defendant to pay as additional child support 50 percent of the first $20,000 in aggregate commissions that he is entitled to receive and 25 percent of any aggregate commissions in excess of $20,000.

and the substantial deviation from child support guidelines provision establish the authority of the trial court to modify existing child support orders to respond to changed economic conditions. The first allows the court to modify a support order when the financial circumstances of the individual parties have changed, regardless of their prior contemplation of such changes. The second allows the court to modify child support orders that were once deemed appropriate but no longer seem equitable in the light of changed social or economic circumstances in the society as a whole . . . ." (Internal quotation marks omitted.) *Syragakis* v. *Syragakis*, 79 Conn. App. 170, 174, 829 A.2d 885 (2003).

On March 12, 2007, the defendant filed an amended appeal in AC 28165, claiming that the court improperly calculated the weekly support order of $207 and challenging the court's supplemental support order. Subsequently, AC 28165 and AC 28270 were consolidated under Practice Book § 61-7.

The defendant's consolidated appeal challenges both factual findings and legal conclusions of the court. Specifically, the defendant claims that the court (1) improperly determined that his earning capacity was $75,000, (2) improperly issued a supplemental order applicable to his future commissions, (3) abused its discretion in awarding sole legal custody of the children to the plaintiff, (4) improperly awarded attorney's fees to the plaintiff and (5) improperly determined his modified support obligation of $207 per week. We disagree with all the defendant's claims except the one pertaining to the court's supplemental order.

At the outset, we set forth the applicable standard of review. "As has been repeatedly stated by this court, judicial review of a trial court's exercise of its broad discretion in domestic relations cases is limited to the questions of whether the [trial] court correctly applied the law and could reasonably have concluded as it did. . . . Our function in reviewing such discretionary decisions is to determine whether the decision of the trial court was clearly erroneous in view of the evidence and pleadings in the whole record. . . . With respect to the financial awards in a [child support matter], great weight is given to the judgment of the trial court because of its opportunity to observe the parties and the evidence. . . . For that reason, we allow every reasonable presumption . . . in favor of the correctness of [the trial court's] action." (Citations omitted; internal quotation marks omitted.) *Brent* v. *Lebowitz*, 67 Conn. App. 527, 529–30, 787 A.2d 621, cert. granted on other grounds, 260 Conn. 902, 793 A.2d 1087 (2002) (appeal

withdrawn April 25, 2002). Mindful of these principles, we turn to the issues at hand.

I

The defendant first claims that the court improperly imputed to him an earning capacity of $75,000. Specifically, the defendant argues that the court's finding was clearly erroneous in light of the evidence in the record. We disagree.

In its September 28, 2006 support order, the court made the following findings: "The defendant is forty-four years of age. He was born in Portugal. He lived there until age eight when he came to Bridgeport . . . . He has lived in Connecticut ever since. He attended public schools and completed the tenth grade. At [age] sixteen, he dropped out of school and went to work full-time. He has no other formal education. He worked various menial jobs until he was employed by the city of Bridgeport as a driver. After thirteen to fourteen years, he left the employ of the city of Bridgeport in 1995 to engage full-time in his own carting business known as D.C. Carting . . . . He started the business in 1989 and has engaged in it part-time while working full-time for the city of Bridgeport.

"The defendant's business receipts to D.C. Carting . . . were largely in the form of cash payments. He took numerous and large loans from his solely owned business to pay his personal expenses. During the years 2001 through 2004, the defendant's net personal income from his carting business fluctuated from $80,000 to $278,000 per year. On December 31, 2005, D.C. Carting went out of business, and the defendant has not engaged in full-time employment since then. . . . Since December 31, 2005, the defendant has not made a significant or good faith effort to find regular employment. . . . He knows people who will hire him when he is ready

to work full-time, but he is not ready yet to work full-time." The court then concluded that the defendant is able to work a minimum of forty hours per week and, on the basis of his background and experience, has an earning capacity of at least $75,000.

"[T]he court may base financial awards on earning capacity rather than actual earned income of the parties. . . . While there is no fixed standard for the determination of an individual's earning capacity . . . it is well settled that earning capacity is not an amount which a person can theoretically earn, nor is it confined to actual income, but rather it is an amount which a person can realistically be expected to earn considering such things as his vocational skills, employability, age and health." (Internal quotation marks omitted.) *Carasso* v. *Carasso*, 80 Conn. App. 299, 305, 834 A.2d 793 (2003), cert. denied, 267 Conn. 913, 840 A.2d 1174 (2004). "[T]he court may consider earning capacity from employment when the evidence shows that the reported amount of earnings is unreasonable. Thus, for example, when a person is, by education and experience, capable of realizing substantially greater earnings simply by applying himself or herself, the court has demonstrated a willingness to frame its orders on capacity rather than actual earnings." *Weinstein* v. *Weinstein*, 87 Conn. App. 699, 706, 867 A.2d 111 (2005), rev'd on other grounds, 280 Conn. 764, 911 A.2d 1077, after remand, 104 Conn. App. 482, 934 A.2d 306 (2007), cert. denied, 285 Conn. 911, 943 A.2d 472 (2008).

On appeal, the defendant has failed to demonstrate how the court's finding that he has an earning capacity of $75,000 per year was clearly erroneous. Although the defendant claims that imputing to him an earning capacity of $75,000 is unrealistic given his limited education and vocational skills, he does not challenge the court's findings that his net personal income fluctuated from $80,000 to $278,000 per year between the years

2001 and 2004. Furthermore, the court heard expert testimony that estimated the defendant's income in 2005 to be $79,000. Accordingly, it cannot be said that the court's imputing an earning capacity of $75,000 to the defendant has no reasonable basis in fact. The court's finding that the defendant has an earning capacity of $75,000, therefore, was not clearly erroneous.

## II

The defendant's next claim is that the court's order impermissibly deviated from the child support and arrearage guidelines (guidelines).[6] Specifically, the defendant claims that the court (1) failed to include his commissions as a part of its current support order and (2) issued a supplemental support order that is not generally consistent with the guidelines. We agree with the latter portion of the defendant's claim.

The following additional facts are relevant to our resolution of these issues. The court found that in addition to his weekly salary from Associated Carting, the defendant is entitled to a commission on an annualized basis. His commission is equal to one sixth of the value of all new accounts he solicits and that continue to do business with Associated Carting for at least one year, minus $2000. Since November 1, 2006, the defendant solicited on average three new accounts per month and believes he can continue to solicit "at least" three new accounts each month. The value of these accounts ranges from $80 to $240.

---

[6] The plaintiff questions whether the defendant's claim is ripe for review. If an issue is not yet ripe for adjudication, this court lacks subject matter jurisdiction to afford it consideration. See *Esposito* v. *Specyalski*, 268 Conn. 336, 347, 844 A.2d 211 (2004). Contrary to the plaintiff's assertions, however, the defendant's claim is justiciable because it is capable of resolution on the merits by judicial action. See *Cumberland Farms, Inc.* v. *Groton*, 46 Conn. App. 514, 517, 699 A.2d 310 (1997), rev'd on other grounds, 247 Conn. 196, 719 A.2d 465 (1998).

On the basis of its findings, the court issued a supplemental order requiring the defendant to pay a percentage of his future commissions as child support in addition to his basic weekly support obligation of $207. Under the supplemental order, the defendant is required to pay 50 percent of the first $20,000 in aggregate commissions that he is entitled to receive and 25 percent of any commission in excess of $20,000 that he is entitled to receive. On appeal, the defendant claims that the court was required to include his commissions in the figure used to calculate his basic weekly support obligation rather than make them subject to a supplemental order. He also claims that if a supplemental order was proper, the court's order was not of a percentage that is generally consistent with the guidelines.

Resolution of this issue requires us to interpret the statutory scheme that governs child support determinations in Connecticut and, therefore, is a question of law. See *Unkelbach* v. *McNary*, 244 Conn. 350, 357, 710 A.2d 717 (1998). The standard of appellate review governing questions of law dictates that "[w]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) Id. "When the question of law involves statutory interpretation, that determination is guided by well settled principles." Id. In construing statutes, "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) Id. Moreover, our rules of statutory construction apply to administrative

regulations. *Diamond* v. *Marcinek*, 226 Conn. 737, 744 n.8, 629 A.2d 350 (1993).

Our examination of the guidelines leads us to conclude that the court properly subjected the defendant's commissions to a supplemental order but that the court's order impermissibly deviated from the guidelines. Accordingly, we reverse in part the judgment of the trial court.

A

The first portion of the defendant's claim is that the court improperly issued a supplemental order applicable to his future commissions. The defendant claims that the guidelines define gross income as including commissions, and, therefore, his future commissions must be included as part of his basic support obligation and not part of a supplemental order. We disagree.[7]

Although it is true that our regulations define "gross income" as "the average weekly earned and unearned income from all sources before deductions, including but not limited to the items listed in subparagraph (A)"; Regs., Conn. State Agencies § 46b-215a-1 (11); and subparagraph (A) includes "commissions, bonuses and tips"; id., § 46b-215a-1 (11) (A) (iii);[8] the regulations

[7] The defendant also claims that the court failed to state on the record why its order deviates from the guidelines. See Regs., Conn. State Agencies § 46b-215a-3. Because we find that the court properly issued a supplemental order, the court did not deviate from the guidelines. Accordingly, no specific finding on the record was required, and the defendant's claim fails.

[8] Section 46b-215a-1 (11) (A) of the Regulations of Connecticut State Agencies provides: "The gross income inclusions are: (i) salary; (ii) hourly wages for regular, overtime and additional employment not to exceed 45 total paid hours per week; (iii) commissions, bonuses and tips; (iv) profit sharing, deferred compensation and severance pay; (v) tribal stipends and incentives; (vi) employment perquisites and in-kind compensation (any basic maintenance or special need such as food, shelter or transportation provided on a recurrent basis in lieu of or in addition to salary or wages); (vii) military personnel fringe benefit payments; (viii) benefits received in place of earned income including, but not limited to, workers' compensation benefits, unemployment insurance benefits, strike pay and disability insurance benefits; (ix) veterans' benefits; (x) social security benefits (excluding Supplemental Security Income [SSI] for a parent or a child), including dependency benefits

make clear that only income with a reasonably ascertainable value may be included in gross income. See Child Support and Arrearage Guidelines, preamble, § (g), p. ix.[9] The defendant's future commissions are of an unknown amount and, therefore, may not be included in his gross income.

The guidelines effective August 1, 2005, provide that the court may, in appropriate cases, enter a supplemental support order requiring a parent to pay a percentage of a future lump sum payment of an unknown amount that he expects to receive.[10] See Regs., Conn. State Agencies § 46b-215a-2b.[11] The guidelines explain that

on the earnings record of an insured parent that are paid on behalf of a child whose support is being determined; (xi) net proceeds from contractual agreements; (xii) pension and retirement income; (xiii) rental income after deduction of reasonable and necessary expenses; (xiv) estate or trust income; (xv) royalties; (xvi) interest, dividends and annuities; (xvii) self-employment earnings, after deduction of all reasonable and necessary business expenses; (xviii) alimony being paid by an individual who is not a party to the support determination; (xix) adoption subsidy benefits received by the custodial parent for the child whose support is being determined; (xx) lottery and gambling winnings, prizes and regularly recurring gifts (except as provided in subparagraph [B] [v] of this subdivision); and (xxi) education grants (including fellowships or subsidies, to the extent taxable as income under the Internal Revenue Code)."

[9] The guidelines are preceded by a preamble that "is intended to assist users of the child support and arrearage guidelines but is not part of the official regulations." Child Support and Arrearage Guidelines, preamble, § (a), p. i.

[10] Pursuant to General Statutes § 46b-215a, the commission for child support guidelines is charged with updating the guidelines every four years. The 1999 guidelines did not specifically allow for supplemental orders. In the 2005 update, the commission specifically allowed supplemental orders. The preamble to the guidelines states that the approach adopted by the commission "maintains the integrity of the current support calculation method, since it does not attempt to include indeterminate or speculative amounts in a parent's gross income. It also saves the parties from returning to court to modify the support order to account for receipt of the payment." Child Support and Arrearage Guidelines, preamble, § (g) (6), p. ix.

[11] Section 46b-215a-2b (c) of the Regulations of Connecticut State Agencies provides in relevant part: "The primary requirement of a specific dollar amount of current support shall not preclude the entry of a supplemental order, in appropriate cases; to pay a percentage of a future lump sum payment, such as a bonus. Such supplemental orders may be entered only when: (i) such payment is of an indeterminate amount; and (ii) the percent-

"[w]hile the expected amount may be substantial, the indeterminate nature of such payment precludes its inclusion in the gross income of the parent expected to receive it." Child Support and Arrearage Guidelines, preamble, § (g) (6), p. ix. A supplemental order treats the unknown future lump sum payment separately from the basic current support order and is intended to account only for those instances in which "the parties have knowledge of an anticipated future lump sum payment of an unknown amount, such as a bonus." Id.

In the present case, it is undisputed that the defendant's future commissions are of an indeterminate amount.[12] Accordingly, the court was permitted to craft a supplemental support order to account for these future lump sum payments of an unknown amount. The court, therefore, was not required to include the defendant's commissions in his gross income, and this portion of the defendant's claim fails.

### B

The next portion of the defendant's claim is that the court's supplemental support order is not generally consistent with the guidelines and, therefore, is invalid. We agree with the defendant, albeit for differing reasons, and conclude that the court (1) impermissibly based its supplemental order on his gross commissions, rather than his net commissions, and (2) improperly

age is generally consistent with the schedule in subsection (f) of this section. . . ."

[12] We note that the court did not make an express finding that the future commissions were of an indeterminate amount. In their respective briefs and at oral argument, the parties did not address whether such a finding is a prerequisite to the issuance of a supplemental support order. Cf. *Weinstein* v. *Weinstein*, 104 Conn. App. 482, 494, 934 A.2d 306 (2007) (preliminary finding of substantial change in circumstances is prerequisite to making support modification on basis of substantial change of circumstances), cert. denied, 285 Conn. 911, 943 A.2d 472 (2008). We decline to address the issue sua sponte.

ordered him to pay an excessive percentage of his future commissions as supplemental support.

We note at the outset that the legal issue that confronts us is more easily stated than resolved. After a court determines that a supplemental order is appropriate because a parent expects to receive a future payment of an indeterminate amount, the court may enter an order that the parent pay a percentage of that future payment as supplemental support upon receipt of the payment. Regs., Conn. State Agencies § 46b-215a-2b (c) (1) (B). The regulations provide that the percentage must be *generally consistent* with the schedule in subsection (f) of the guidelines. Id. In the present case, the court ordered the defendant to pay 50 percent of the first $20,000 in aggregate commissions that he is entitled to receive and 25 percent of any commission in excess of $20,000 that he is entitled to receive. Our task, therefore, is to determine whether the court's supplemental order is of a percentage that is generally consistent with the schedule.

The guidelines neither define nor provide express guidance on what the phrase "generally consistent" means. Webster's Third New International Dictionary defines "generally," in relevant part, as "in a general manner" and "as a whole." The word "consistent" means "marked by harmony, regularity, or steady continuity throughout . . . showing no significant change, unevenness, or contradiction." Id. A supplemental order, therefore, is generally consistent with the schedule when it is of a percentage that, as a whole, is in harmony with the schedule.

The schedule itself is a seven page table listing the basic child support obligation for parents of varying income levels. See Child Support and Arrearage Guidelines, pp. 10–17. The left column contains rows listing the parents' combined net weekly income, beginning

with $50 and increasing in $10 increments to $4000. The other six columns provide the support obligation for parents supporting from one to six children. To determine a parent's basic child support obligation, the guidelines instruct a user to find the block in the schedule that corresponds to the combined net weekly income of the parents and the number of children whose support is being determined. The element that corresponds to the parents' combined net weekly income and their number of children provides the presumptive current support obligation.[13] The schedule expresses the support obligation as both a dollar figure and a percentage.

We conclude that the court's supplemental order is not generally consistent with the schedule for two reasons. First, the court's order is based on the defendant's gross commissions, rather than his net commissions. Second, the court's supplemental order unfairly burdens the defendant with too high a percentage support obligation. We address each of these conclusions in turn.

1

Although the unique variables involved in crafting a supplemental order make defining the contours of "generally consistent" elusively difficult, "[i]t is well settled that a court must base its child support and alimony orders on the available net income of the parties, not gross income. *Collette* v. *Collette*, 177 Conn. 465, 469, 418 A.2d 891 (1979)." *Hughes* v. *Hughes*, 95 Conn. App. 200, 204, 895 A.2d 274, cert. denied, 280 Conn. 902, 907 A.2d 90 (2006). To that end, the schedule

---

[13] In the present case, the court found that the parties' combined net weekly income is $508 and their support obligation is for three children. Their basic current support obligation, therefore, is $207 per week or 40.68 percent. The defendant is responsible to pay this entire amount because the plaintiff has no net weekly income. See Regs., Conn. State Agencies § 46b-215a-2b (c) (4).

used to determine a parent's child support obligation is based on the parents' combined net weekly income, rather than gross weekly income.

In the present case, the court's order required the defendant to pay a percentage of his aggregate yearly commissions but did not permit him to subtract from this amount any allowable deductions. The result is that the court's supplemental order was based on the defendant's gross commissions. Although an order incorporating a percentage of any commission payment is certainly the scenario contemplated by the commission for child support guidelines in drafting the regulations, the use of the defendant's gross commissions is not generally consistent with the schedule in subsection (f). Because this issue will likely arise on remand, we take this opportunity to comment on the net value of a future payment of an indeterminate amount.

Net income is defined in the regulations as gross income minus allowable deductions. Regs., Conn. State Agencies § 46b-215a-1 (17); see also id., § 46b-215a-1 (1) (A) through (J) (listing allowable deductions). Similarly, the net value of a future payment of an indeterminate amount is equal to the payment's gross value minus allowable deductions. We believe that for a supplemental order to be of a percentage that is generally consistent with the schedule, potential allowable deductions must be accounted for in a meaningful way. A court's use of gross income to calculate a supplemental order renders the supplemental order invalid.

When crafting a supplemental order, a court should be mindful that a supplemental order is a tool of convenience that is intended to account for future payments of an unknown amount before the payments are received. Absent a supplemental order, each time a future payment of an unknown amount was received

by a parent, the parties would have to return to court to modify the current support order to reflect the parent's receipt of additional income. A supplemental order saves the parties from having to return to court by accounting for a future payment of an unknown amount before the payment's receipt.

It is difficult, however, for a court to determine the exact value of allowable deductions before knowing the exact value of a future lump sum payment. The very nature of many allowable deductions renders their value unknown until the value of the future payment becomes known.[14] A supplemental order, however, need not account exactly for all of a parent's allowable deductions—the regulations mandate only that the order be of a percentage that is generally consistent with the schedule. A court may fulfill this mandate by approximating what deductions will be allowable from a future lump sum payment and then tailoring its order accordingly.[15] Although we decline to dictate how a court should account for allowable deductions, we believe that, in some instances, it may be appropriate to issue a supplemental order that preserves the ratio of net income to gross income found in the current support order.

In the present case, the court's supplemental order fails to account for any allowable deductions that the defendant may take from his future gross commissions.

---

[14] For example, federal, state and local income taxes are allowable deductions whose value will not be known until the future payment is actually received. In some instances, however, the allowable deductions may remain fixed regardless of the value of the future lump sum payment. See Regs., Conn. State Agencies § 46b-215a-1 (1) (D) (medical, hospital, dental or health insurance premium payments); § 46b-215a-1 (1) (E) (court-ordered life insurance); § 46b-215a-1 (1) (F) (court-ordered disability insurance); and § 46b-215a-1 (1) (H) (costs of mandatory uniforms and tools).

[15] If, after the value of a future payment becomes known, the court's approximations prove to be inaccurate, either parent may seek modification of the court's support orders. See General Statutes § 46b-86.

The court's failure to account for allowable deductions burdens the defendant with a support obligation that is not generally consistent with the schedule. Accordingly, the court's supplemental order is invalid.

2

A valid supplemental order must account for a parent's declining percentage support obligation that accompanies an increase in income. The court's two tiered supplemental order is not of a percentage that is generally consistent with the schedule because it burdens the defendant with an excessive percentage support obligation at all income levels.

The guidelines are based on the premise that a parent with a high net income pays a lower percentage of his income for child support as compared to an obligor with a lower net income.[16] The preamble explains that "[i]n general, the economic studies have found that spending on children declines as a proportion of family income as that income increases . . . ." Child Support and Arrearage Guidelines, preamble, § (d), p. iii. Toward this end, the schedule imposes a declining percentage support obligation on a parent as his income

[16] "The guidelines are predicated upon the concept that children should receive the same proportion of parental income that they would have received had the family remained intact. Child Support and Arrearage Guidelines, preamble, § (c), pp. ii–iii. Toward that end, the guidelines are income driven, rather than expense driven. At each income level, the guidelines allocate a certain percentage of parental income to child support. The percentage allocations contained in the guidelines aim to reflect the average proportions of income spent on children in households of various income and family sizes, and contain a built-in self-support reserve for the obligor. Id., § (c) and (d), pp. ii–iii. The result is that the guidelines incorporate an allocation of resources between parents and children that the legislature has decided is the appropriate allocation. Consequently, our interpretation of the guidelines must seek to preserve this allocation." *Unkelbach* v. *McNary*, supra, 244 Conn. 357–58.

increases.[17] The percentage support obligations listed
in the schedule range from between 41.67 percent for
parents with a combined net weekly income of $330 to
17.16 percent for parents with a combined net weekly
income of $4000.[18] The guidelines also contain provi-
sions for those instances in which an obligor's income
exceeds the range of the schedule. See Child Support
and Arrearage Guidelines, preamble, § (e) (6), p. vi ("the
amount of support prescribed at the $4,000 level is
presumed to be the minimum that should be ordered
in such cases"). In light of the mandate contained in
the regulations that a supplemental order must be of a
percentage that is generally consistent with the sched-
ule; Regs., Conn. State Agencies § 46b-215a-2b (c) (1)
(B); we believe that a supplemental order must account
for the schedule's inverse relationship between a par-
ent's net income and his weekly support obligation,
while also accounting for those instances in which a
future payment of unknown amount exceeds the range
of the schedule.

In the present case, the court's supplemental order
required the defendant to pay 50 percent of the first
$20,000 in aggregate commissions that he is entitled to
receive and 25 percent of any commission in excess of
$20,000 that he is entitled to receive. Although the
court's two tiered methodology attempted to account
for the schedule's inverse relationship between net
income and an obligor's weekly support obligation, we
cannot say that the supplemental order is generally
consistent with the schedule. No matter how large or
small the defendant's commission, he is obligated to
pay as supplemental support 50 percent of the first

[17] The decline in spending, however, is not linear—as family income
increases, the percentage allocated for support decreases at a varying rate.
The result is that the basic support obligation is not a linear function of
income.

[18] These figures are based on the support obligation for three children,
as in the present case.

$20,000 and 25 percent of any amount over $20,000. We conclude that the court's order excessively burdened the defendant by obligating him to pay too high a percentage of his future commissions as supplemental support. No matter what the actual value of the defendant's future commission, he will always be obligated to pay as support a higher percentage than what the schedule mandates. This is an impermissible deviation from the income allocation that the legislature has decided is appropriate. See *Unkelbach* v. *McNary*, supra, 244 Conn. 357–58 (interpretation of guidelines must seek to preserve allocation of resources that legislature decided appropriate). Furthermore, the supplemental order did not account for those instances in which the defendant's commissions exceed the range of the schedule. Accordingly, we conclude that the court's supplemental order is invalid.

On remand, the court should craft a supplemental order that requires the defendant to pay a declining percentage of supplemental support as the future lump sum payment increases while also accounting for those instances in which the future lump sum payment exceeds the range of the schedule. The percentages in the court's order should be within the range utilized by the schedule.

3

The final component of the defendant's claim requires us to determine whether on remand the court must reconsider all of its financial orders. Financial orders concerning child support obligations are often described as "entirely interwoven" and as "a carefully crafted mosaic, each element of which may be dependent on the other." (Internal quotation marks omitted.) *Smith* v. *Smith*, 249 Conn. 265, 277, 752 A.2d 1023 (1999) (citing cases). "Consequently, when an appellate court reverses a trial court judgment based on an improper

alimony, property distribution, or child support award, the appellate court's remand typically authorizes the trial court to reconsider all of the financial orders. . . . Every improper order, however, does not necessarily merit a reconsideration of all of the trial court's financial orders. A financial order is severable when it is not in any way interdependent with other orders and is not improperly based on a factor that is linked to other factors." (Citations omitted.) Id.

In the present case, the court determined its supplemental order apart from its other financial orders. As a result, reversing the judgment only insofar as it relates to that order does not undermine the other financial orders because its impropriety does not place the correctness of the other orders in question. See id., 279. We conclude, therefore, that the court's supplemental order is severable from all the other financial orders made by the court.

### III

The defendant's third claim is that the court abused its discretion in awarding the plaintiff sole legal custody of the parties' three minor children.[19] Specifically, he claims that the evidence in the record does not support the court's ruling. Because we find the record inadequate, we decline to review this claim.

In its memorandum of decision, the court ordered that the plaintiff shall have sole legal and physical custody of the minor children and that the defendant shall have reasonable rights of visitation. Although the court

---

[19] We note that the defendant did not seek in any pleading a request for custody and, up until the first day of trial, denied that he was the father of the children born of this relationship. Before the trial commenced, the plaintiff's attorney stated on the record and without objection from the defendant that he thought custody was not an issue in this case. It was only in final argument that the defendant's attorney for the first time made a claim for joint custody.

made numerous findings of fact regarding both the plaintiff and the defendant, the court did not state the factual basis for its custody award. General Statutes § 46b-56 (b) provides that the court in making or modifying custody orders shall consider the rights and responsibilities of both parents and shall enter orders that serve the best interests of the children. "The controlling principle in a determination respecting custody is that the court shall be guided by the best interests of the child." (Internal quotation marks omitted.) *Ford* v. *Ford*, 68 Conn. App. 173, 187, 789 A.2d 1104, cert. denied, 260 Conn. 910, 796 A.2d 556 (2002). The record before us is silent as to the best interests of the children.

"It is the appellant's burden to supply us with a record adequate to provide a proper review, and, [w]here the factual basis of the court's decision is unclear, proper utilization of the motion for articulation serves to dispel any such ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal." (Internal quotation marks omitted.) *Ashton* v. *Ashton*, 31 Conn. App. 736, 741, 627 A.2d 943, cert. denied, 228 Conn. 901, 634 A.2d 295 (1993). "Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court, either on its own or in response to a proper motion for articulation, any decision made by us respecting this claim would be entirely speculative." (Internal quotation marks omitted.) *Westfall* v. *Westfall*, 46 Conn. App. 182, 184, 698 A.2d 927 (1997).

It was the defendant's burden, as the appellant, to file a motion for articulation that would clarify the trial court's basis for and reasoning behind its awarding sole legal and physical custody to the plaintiff. See Practice Book § 66-5; *Gelormino* v. *Liberman*, 36 Conn. App.

153, 154 n.1, 649 A.2d 259, cert. denied, 231 Conn. 946, 653 A.2d 826 (1994). Without such an articulation, it is unclear how the court determined that awarding sole custody to the plaintiff was in the children's best interests. There is no adequate record permitting review of this claim, and the defendant failed to file a motion for articulation. Therefore, we decline to review the defendant's claim.

## IV

The defendant's fourth claim is that the court improperly awarded $6125 in counsel fees and $5000 in costs to the plaintiff. We disagree.

General Statutes § 46b-62 vests in the trial court the discretion to award attorney's fees in custody proceedings.[20] Our Supreme Court has included within the definition of attorney's fees allowable under § 46b-62 certain costs of litigation, including expert witness fees. See *Eslami* v. *Eslami*, 218 Conn. 801, 819–21, 591 A.2d 411 (1991); *Medvey* v. *Medvey*, 98 Conn. App. 278, 287, 908 A.2d 1119 (2006). The criteria to be considered in determining whether an award of attorney's fees is appropriate include "the age, health, station, occupation, amount and sources of income, vocational skills, employability [and] estate and needs of each of the parties . . . ." General Statutes § 46b-82. We review the court's awarding of attorney's fees under the abuse of discretion standard. See *Medvey* v. *Medvey*, supra, 287–88. The ultimate issue in our review, therefore, is whether the court reasonably could have concluded as it did. Id., 288.

In the present case, the court reasonably could have concluded as it did. The record supports the court's

---

[20] General Statutes § 46b-62 provides in relevant part: "In any proceeding seeking relief under the provisions of [chapter 815j], the court may order . . . either parent to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82. . . ."

finding that the plaintiff had no income other than the child support she received from the defendant and her previous husband, and that the defendant was five weeks in arrears and owed the plaintiff $1750 in past due child support. There also is ample evidence in the record demonstrating the defendant's financial status and earning capacity. On the basis of those considerations, it was reasonable for the court to have determined that counsel fees of $6125 and expert witness fees of $5000 should be allowed. Furthermore, the court did not abuse its discretion in ordering that the defendant pay the award within ninety days. The court found that the defendant had liquid assets that he did not disclose on his financial affidavit and, on that basis, reasonably could have concluded as it did. Accordingly, we cannot conclude that the court abused its discretion when awarding the plaintiff attorney's fees.

V

The defendant's fifth claim is that the court improperly failed to follow the guidelines in ruling on his motion for modification. Specifically, the defendant claims that the order requiring him to pay $207 per week in child support is an impermissible deviation from the guidelines. We will not review this claim because the defendant failed to submit a child support guidelines worksheet as required by Practice Book § 25-30 (e).[21]

In a motion for modification proceeding, the parties have an affirmative obligation to submit to the court certain sworn statements concerning income, expenses, assets and liabilities, as well as a child support guidelines worksheet. See Practice Book § 25-30.

___

[21] Practice Book § 25-30 (e) provides in relevant part that "the parties shall file a completed child support and arrearage guidelines worksheet at the time of any court hearing concerning child support . . . ." The child support guidelines worksheet is set forth in § 46b-215a-2b of the Regulations of Connecticut State Agencies.

"In *Favrow* v. *Vargas*, 231 Conn. 1, 29, 647 A.2d 731 (1994), our Supreme Court stressed adherence by the trial court to observe the procedures set out in the child support guidelines to facilitate appellate review. Recently, in *Bee* v. *Bee*, 79 Conn. App. 783, 787–88, 831 A.2d 833, cert. denied, 266 Conn. 932, 837 A.2d 805 (2003), we concluded that a party who fails to submit a child support guidelines worksheet is precluded from complaining of the alleged failure of the trial court to comply with the guidelines and that we will not review such a claim." *Kunajukr* v. *Kunajukr*, 83 Conn. App. 478, 485, 850 A.2d 227, cert. denied, 271 Conn. 903, 859 A.2d 562 (2004).

Although the record before us contains financial affidavits that each party filed with the court on January 18, 2007, our review of the record fails to reveal the defendant's child support guidelines worksheet.[22] The defendant has failed to provide any meaningful distinction between this case and *Bee*. Accordingly, we decline to review his claim.

The judgment is reversed only as to the supplemental child support order and the case is remanded for further proceedings consistent with this opinion. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

---

[22] In the appendix to his brief, the defendant included a copy of a worksheet that he claims is part of the record. This copy does not contain a date stamp indicating the date of its filing with the trial court clerk. Furthermore, the record and case file do not contain a copy of the worksheet that the defendant included in his appendix. Accordingly, this worksheet is not part of the record before us. See Practice Book § 61-10; *Blakeman* v. *Planning & Zoning Commission*, 82 Conn. App. 632, 641 n.8, 846 A.2d 950 ("[i]n deciding a case, this court cannot resort to matters extraneous to the formal record, to facts which have not been found and which are not admitted in the pleadings, or to documents or exhibits which are not part of the record" [internal quotation marks omitted]), cert. denied, 270 Conn. 905, 853 A.2d 521 (2004).