## HEATHER P. BOYNE *v.* PAUL A. BOYNE
### (AC 28996)

Bishop, Harper and Beach, Js.

Argued November 13, 2008—officially released January 20, 2009

*Louis Kiefer*, for the appellant (defendant).

*Jennifer L. Owens*, for the appellee (plaintiff).

*Opinion*

BISHOP, J. The defendant, Paul A. Boyne, appeals from the judgment of the trial court dissolving his marriage to the plaintiff, Heather P. Boyne. On appeal, the defendant claims that the court improperly (1) determined his earning capacity, (2) required him to obtain life insurance in the absence of any evidence as to its cost or availability, (3) ordered him obtain a bond to

secure the payment of his child support and alimony obligations, (4) allocated tax exemptions, (5) determined his obligation of unreimbursed medical expenses and day care expenses, (6) declared that all of the financial orders in the judgment were in the nature of support and not dischargeable in bankruptcy and (7) ordered him to transfer custodianship of the children's educational accounts to the plaintiff. We affirm in part and reverse in part the judgment of the trial court.

By way of a memorandum of decision, the court dissolved the parties' sixteen year marriage on June 25, 2007. At the time of dissolution, the parties had four minor children. The court found that the marriage had broken down irretrievably and attributed the primary fault for the breakdown of the marriage to the defendant. In addition to custody and visitation orders, the court entered various financial orders. The court found, inter alia, that the defendant has an earning capacity of $100,000 per year and, throughout the marriage, had many employment changes. The court stated that it considered, inter alia, "all of the factors in . . . General Statutes §§ 46b-81, 46b-82 and 46b-62 and other pertinent statutes, earnings and earning capacity differentials, causes for the breakdown of the marriage and the consequences of the financial awards set forth [in the memorandum of decision]."

Relevant to the defendant's appeal, the court ordered that the defendant pay to the plaintiff alimony and child support. The court also ordered the defendant to pay 59 percent of all unreimbursed medical expenses and reasonable and necessary day care expenses; that each party would be entitled to claim two of the four minor children for tax exemptions commencing in 2006; that the defendant maintain life insurance in the amount of $500,000, naming the plaintiff as primary irrevocable beneficiary for her benefit and for the benefit of the children until all orders for child support, alimony and

payment of other certain debt had been paid in full; that the defendant transfer to the plaintiff custodianship of certain accounts for the children's education; and that the defendant obtain a bond to support the payment of alimony and child support for a period of one year. The court declared that the financial orders are all in the nature of support and, accordingly, shall not be dischargeable in bankruptcy by either party.

At the outset, we set forth the applicable standard of review. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . .

"A fundamental principle in dissolution actions is that a trial court may exercise broad discretion in awarding alimony and dividing property as long as it considers all relevant statutory criteria." (Internal quotation marks omitted.) *Cleary* v. *Cleary*, 103 Conn. App. 798, 800–801, 930 A.2d 811 (2007).

I

The defendant first claims that the court improperly imputed to him an earning capacity of $100,000 per

year. The defendant claims that because he was unemployed at the time of the dissolution, and his average income for the prior three years was approximately $41,000, the court's finding that he has an earning capacity of $100,000 is baseless. We are unpersuaded.

"[T]he court may base financial awards on earning capacity rather than actual earned income of the parties. . . . While there is no fixed standard for the determination of an individual's earning capacity . . . it is well settled that earning capacity is not an amount which a person can theoretically earn, nor is it confined to actual income, but rather it is an amount which a person can realistically be expected to earn considering such things as his vocational skills, employability, age and health. . . . [T]he court may consider earning capacity from employment when the evidence shows that the reported amount of earnings is unreasonable. Thus, for example, when a person is, by education and experience, capable of realizing substantially greater earnings simply by applying himself or herself, the court has demonstrated a willingness to frame its orders on capacity rather than actual earnings." (Citation omitted; internal quotation marks omitted.) *Gentile* v. *Carneiro*, 107 Conn. App. 630, 638, 946 A.2d 871 (2008). It is appropriate to consider a party's earning capacity where there is evidence of that party's previous earnings. *Paddock* v. *Paddock*, 22 Conn. App. 367, 371, 577 A.2d 1087 (1990).

The defendant is a licensed electrical engineer. At the time the parties were married, the defendant was in the United States Navy. Subsequently, throughout the marriage, the defendant held several different jobs, some temporary in nature. As noted, at the time of the dissolution trial, the defendant was unemployed. According to the evidence presented, the defendant was employed from November, 2005, until May, 2006, when his employment was terminated. His annual salary for that position was $100,000. The plaintiff testified that

the defendant's typical annual salary was $100,000. The defendant testified that he earned $127,000 in 2001. The evidence presented disclosed that the defendant's longest period of unemployment, prior to that commencing in 2006, was a nine month period in 2003. During his periods of unemployment, the family bills were paid by unemployment insurance in the amount of $2000 per month. The defendant also testified that he worked for a couple of different firms at an hourly rate ranging between $36 and $50 per hour.

In support of his claim, the defendant presented his tax returns for 2003, 2004 and 2005, which indicate an average annual salary for those years of approximately $41,000. Although the court did not find that the defendant wilfully diminished his earnings, and, in fact, the defendant indicated that he has sent out more than 100 resumes, nationally and internationally,[1] and that he had had a couple of interviews, the fact that the defendant has been unemployed does not necessarily mean that his earning capacity has been diminished. See *Berry* v. *Berry*, 88 Conn. App. 674, 685, 870 A.2d 1161 (2005) ("loss of employment does not warrant alimony modification unless the moving party also proves that [the party's] earning capacity has changed substantially").[2]

As an appellate court, we do not review the evidence to determine whether a conclusion different from the one reached could have been reached. "Rather, our role is to determine whether there was a reasonable basis in the record to support the determination made." *Racsko* v. *Racsko*, 91 Conn. App. 315, 324, 881 A.2d 460 (2005). On the basis of the foregoing, we conclude that

---

[1] The defendant is not actively seeking employment in Connecticut.

[2] The defendant contends that he has been unable to obtain employment as a result the plaintiff's actions and his resultant incarceration for violating a restraining order. The defendant, however, provides no support for this claim.

there was sufficient evidence of the defendant's employment history to support the court's finding of an earning capacity of $100,000. The finding, therefore, was neither contrary to law nor clearly erroneous.

## II

The defendant next claims that the court improperly ordered him to obtain a life insurance policy in the amount of $500,000 because there was no evidence of his ability to obtain life insurance, the cost of life insurance or his ability to pay for the policy.[3] We are not persuaded.[4]

"An order for life insurance is very often an appropriate and necessary component of a judgment of dissolution of marriage. . . . Indeed, orders requiring the maintenance of life insurance have been approved on numerous occasions by our courts." (Citation omitted; internal quotation marks omitted.) *Porter* v. *Porter*, 61 Conn. App. 791, 805, 769 A.2d 725 (2001). General Statutes §§ 46b-82 (a)[5] and 46b-84 (f)[6] were amended in

[3] The defendant also argues, in his reply brief, that reliance on §§ 46b-82 (a) and 46b-84 (f) violates his constitutional right to due process. It is "a well established principle that arguments cannot be raised for the first time in a reply brief." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Burton*, 282 Conn. 1, 19 n.7, 917 A.2d 966 (2007). We therefore do not address it.

[4] At oral argument, it was brought to this court's attention that a postjudgment hearing was held regarding life insurance. Because we affirm the judgment in its original form, we need not address that proceeding.

[5] General Statutes § 46b-82 (a) provides in relevant part: "At the time of entering the decree, the Superior Court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. The order may direct that security be given therefor on such terms as the court may deem desirable, including an order pursuant to subsection (b) of this section or an order to either party to contract with a third party for periodic payments or payments contingent on a life to the other party. The court may order that a party obtain life insurance as such security unless such party proves, by a preponderance of the evidence, that such insurance is not available to such party, such party is unable to pay the cost of such insurance or such party is uninsurable. . . ."

[6] General Statutes § 46b-84 (f) provides in relevant part: "After the granting of a decree annulling or dissolving the marriage or ordering a legal separa-

2003 to provide: "The court may order that a party obtain life insurance as such security unless such party proves, by a preponderance of the evidence, that such insurance is not available to such party, such party is unable to pay the cost of such insurance or such party is uninsurable. . . ." These amendments place the burden regarding the availability and cost of the life insurance on the party upon whom the life insurance obligation is to be imposed.

At trial, the plaintiff requested in her proposed orders that the defendant maintain life insurance in the amount of $500,000 to secure the alimony and child support obligations.[7] The defendant did not argue, nor did he present any evidence or ask for an additional opportunity to present evidence, that the insurance was unavailable to him or that it was too costly for him to maintain. Because the defendant failed to meet his burden of proof as required by statute, we cannot conclude that the court abused its discretion in fashioning the life insurance order.[8]

---

tion, and upon complaint or motion with order and summons made to the Superior Court by either parent or by the Commissioner of Administrative Services in any case arising under subsection (a) or (b) of this section, the court shall inquire into the child's need of maintenance and the respective abilities of the parents to supply maintenance. The court shall make and enforce the decree for the maintenance of the child as it considers just, and may direct security to be given therefor, including an order to either party to contract with a third party for periodic payments or payments contingent on a life to the other party. The court may order that a party obtain life insurance as such security unless such party proves, by a preponderance of the evidence, that such insurance is not available to such party, such party is unable to pay the cost of such insurance or such party is uninsurable. . . ."

[7] The parties' proposed orders, both dated September 26, 2006, were filed with the court on October 3, 2006. The trial in this matter was held on October 3 and 4, 2006, and March 1, 2007.

[8] We recognize that this case may appear to conflict with *Watrous* v. *Watrous*, 108 Conn. App. 813, 949 A.2d 557 (2008). We distinguish this case from *Watrous* because the *Watrous* court made it clear that the statute as amended was not brought to the court's attention, plain error review was not sought, and supplemental briefs were not requested and were not filed. Here, the application of the amended statute has been briefed and is squarely before the court.

## III

The defendant next claims that the court abused its discretion in requiring him to obtain a bond to secure his child support and alimony payments for one year. We disagree.

The defendant acknowledges that §§ 46b-82 and 46b-84 give the court the authority to order security for the payment of his alimony and child support obligations. The defendant contends, however, that the cost of a bond to secure his alimony and support obligations for a one year period would be approximately $41,080 and that the court made such an order in the absence of a finding that the bond was available for purchase within the financial means of the obligor in accordance with § 46b-84 (g).[9] As noted, the court indicated that it did consider all of the statutory factors in fashioning its financial orders. See *Tracey* v. *Tracey*, 97 Conn. App. 122, 124–25, 902 A.2d 729 (2006) (court has wide latitude in applying statutory criteria to particular circumstances of case, and although court must consider all statutory criteria in dividing property in dissolution action, it does not need to make express finding as to each criterion). Although the court did not make the specific finding that the defendant had the financial means to secure the bond, the defendant did show on his financial affidavit significant assets, sufficient to secure a bond in the amount required by the court's order. Accordingly, the court acted within its discretion.

## IV

The defendant next claims that the court improperly granted to the plaintiff tax dependency exemptions for

[9] General Statutes § 46b-84 (g) provides in relevant part: "Whenever an obligor is before the court in proceedings to establish, modify or enforce a support order, and such order is not secured by an income withholding order, the court may require the obligor to execute a bond or post other security sufficient to perform such order for support, provided the court finds that such a bond is available for purchase within the financial means of the obligor. . . ."

two of the parties' four children, in addition to deductions for interest payments, property taxes and related deductions, for the 2006 tax year. We are unpersuaded.

It is well established that "[i]t is within a court's power to allocate tax exemptions." *McCarthy* v. *McCarthy*, 60 Conn. App. 636, 639, 760 A.2d 977 (2000). "[W]hen confronted with the question of whether a court may allocate tax exemptions, actions for dissolution of marriage are inherently equitable proceedings. . . . The power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution of a marriage. Without this wide discretion and broad equitable power, the courts in some cases might be unable fairly to resolve the parties' dispute . . . . Our limited scope of review is consistent with the general proposition that equitable determinations that depend on the balancing of many factors are committed to the sound discretion of the trial court." (Internal quotation marks omitted.) *Fish* v. *Fish*, 90 Conn. App. 744, 763–64, 881 A.2d 342 (2005), rev'd in part on other grounds, 285 Conn. 24, 939 A.2d 1040 (2008).

The defendant claims that the order regarding tax exemptions amounted to a retroactive modification of his support obligations and may affect the assets and liabilities of one or both of the parties. The defendant, however, provides no support for this novel argument. Accordingly, we conclude that the court acted equitably and within its discretion in its allocation of tax exemptions.

V

The defendant next claims that the court improperly determined his share of unreimbursed medical and day care expenses and reasonable and necessary day care expenses because it did not consider his alimony obligation in its calculations. The plaintiff concedes, and we

agree, that the alimony award should have been included in the calculation of the parties' respective obligations regarding unreimbursed medical and day care expenses. Accordingly, we reverse the judgment as it relates to this claim.[10]

## VI

The defendant next claims that the court improperly declared that all of its financial orders were in the nature of support and, therefore, not dischargeable in bankruptcy. Although the court does not have the authority to determine the nature of a debt in contravention of a determination by the federal Bankruptcy Court, it was well within its discretion to indicate in its judgment that it was intending all of the orders to be in the nature of support as guidance to the Bankruptcy Court because "[t]he main principle guiding bankruptcy courts in determining whether a debt is nondischargeable alimony, maintenance or support is the intent of the parties or the state court in creating the obligation and the purpose of the obligation in light of the parties' circumstances at the time." 4 W. Collier, Bankruptcy (15th Ed. Rev. 2003) § 523.11 [6]. Accordingly, although the ultimate question of dischargeability rests with the Bankruptcy Court, it was not improper for the trial court to posit that all of its financial orders were in the nature of support.

## VII

The defendant finally claims that the court improperly transferred custodianship of the children's educational accounts to the plaintiff. Specifically, the

---

[10] Although financial orders in a dissolution action generally are interrelated, because this error can be corrected by a mere mathematical calculation, we see no need to remand the entire case for a new trial on the basis of our reversal of this claim alone. See *Gentile* v. *Carneiro*, supra, 107 Conn. App. 651 (every improper order does not necessarily merit reconsideration of all of trial court's financial orders).

defendant contends that the court did not have jurisdiction to make such an order because the custodianship of those accounts rests solely with the Probate Court. In support of this claim, the defendant cites General Statutes §§ 46a-557a and 45-559c (d). Because those statutes do not exist in the General Statutes, the defendant's claim is facially inadequate.

The judgment is reversed as to the order regarding unreimbursed medical and day care expenses and the matter is remanded for further proceedings as to that issue in accordance with this opinion. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.